**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COXCOM, LLC, d/b/a COX COMMUNICATIONS,<br><br>                 Plaintiff,<br><br>        v.<br><br>SUPER TOWERS, INC., and WNAC, LLC,<br><br>                 Defendants. | JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff CoxCom, LLC, d/b/a Cox Communications, ("Cox") brings this civil action to obtain equitable and other relief against Defendants Super Towers, Inc. ("Super Towers") and WNAC, LLC ("WNAC").

## **INTRODUCTION**

1.     This action seeks to redress the wrongful conduct that Defendants committed against Cox with respect to broadcast television station WNAC-TV, licensed by the Federal Communications Commission ("FCC") to serve the Providence, Rhode Island—New Bedford, Massachusetts market. Since 2017, Cox has retransmitted on its cable systems WNAC-TV's broadcast signal to its local subscribers in the Providence—New Bedford market under a negotiated retransmission consent agreement with Defendants, as required by federal law. Instead of upholding their contractual and legal obligations, and despite their repeated representations to Cox, Defendants transferred ownership of WNAC-TV but failed to assign the retransmission consent agreement to WNAC-TV's buyer as the agreement requires. Defendants' wrongful conduct eviscerates the bargained-for terms of the retransmission consent agreement through its term expiring at the end of February 2023, creates a risk that Cox must pay substantially increased

subscriber licensee fees for WNAC-TV's broadcast signal under the station's new ownership, and potentially exposes Cox to claims for breach of contract from WNAC-TV's new owner, copyright infringement, and FCC regulatory enforcement if Cox continues to exercise its right to retransmit WNAC-TV's broadcast signal under the retransmission consent agreement duly negotiated with Defendants.

## PARTIES

2.      Plaintiff Cox is a Delaware limited liability company with its principal place of business in Georgia. Cox Communications, Inc. is the sole member of Cox and is incorporated in Delaware with its principal place of business in Georgia.

3.      Defendant Super Towers is a Florida corporation with its principal place of business in Massachusetts.

4.      Defendant WNAC is a Rhode Island limited liability company with its principal place of business in Massachusetts. Upon information and belief, Super Towers is the sole member of WNAC, and no member is a citizen of Georgia or Delaware.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      This Court also has subject matter jurisdiction over Cox's declaratory judgment claim under 17 U.S.C. § 501(c) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Cox's state law claims under 28 U.S.C. § 1367 because those claims are so closely related to Cox's federal declaratory judgment claim that they form part of the same case or controversy.

2

7.      This Court has personal jurisdiction over Defendants because they each maintain a principal place of business in Massachusetts and have purposefully availed themselves of the privilege of conducting business in Massachusetts.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Cox's claims occurred in this District and because Defendants reside in this District.

9.      The WNAC Retransmission Agreement,[1] as defined below, is construed in accordance with the laws of the State of Delaware.

10.     Massachusetts law governs the statutory unfair competition claim under M.G.L. ch. 93A, § 11 because the parties engaged in trade or commerce in Massachusetts, and Defendants' unfair or deceptive acts or practices occurred primarily and substantially in Massachusetts, where both Defendants reside and have their principal place of business.

## FACTUAL BACKGROUND

### Retransmission Agreements

11.     Most households in the United States get their television programming by subscribing to a multichannel video programming distributor ("MVPD"), such as a cable or satellite operator, which provides subscribers with access to a variety of news, sports, and general entertainment channels, including local broadcast television stations licensed by the FCC to serve a Nielsen-defined designated market area ("DMA"). Under federal law, MVPDs must obtain stations' consent to retransmit their signals.

---

[1] Cox incorporates by reference the WNAC Retransmission Agreement, which is confidential by its terms. Cox includes certain terms of the WNAC Retransmission Agreement as necessary and as permitted under Section 16 of the WNAC Retransmission Agreement. If required, Cox will file the WNAC Retransmission Agreement under seal.

12.     The Communications Act of 1934, as amended, requires MVPDs to obtain consent from certain local broadcast television stations in order to retransmit such stations' signals to subscribers. More specifically, MVPDs are not permitted to "retransmit the signal of a broadcasting station, or any part thereof, except with the express authority of the originating station . . . ." 47 U.S.C. § 325(b).

13.     The Copyright Act grants copyright holders several "exclusive rights to do and to authorize" use of their works, including "in the case of . . . audiovisual works, to perform the copyrighted work publicly." 17 U.S.C. § 106(4). In the context of broadcast television, this includes the exclusive right to transmit a performance of the work to the public. 17 U.S.C. § 101. MVPDs are subject to compulsory licensing schemes to allow the retransmission of broadcasts containing copyright works, which are further conditioned on compliance with the "rules, regulations, or authorizations of the Federal Communications Commission." *See* 17 U.S.C. §§ 111, 119, 122; 47 U.S.C. § 325(b).

14.     MVPDs and the owners of broadcast television stations enter into retransmission consent agreements to establish the terms and conditions for retransmission of stations' signals, including compliance with the Communications Act and the Copyright Act.

15.     Retransmission consent agreements commonly include after-acquired station and assignment provisions in the event the broadcast owner purchases or sells a television station from or to another broadcast owner through merger or acquisition, which is a common occurrence in recent years as the broadcast industry consolidates and owners grow or liquidate their television station portfolio.

16.     After-acquired station and assignment provisions in retransmission consent agreements govern how an owner's television station(s) is treated upon the purchase or sale of a

station, ensure that only one transmission consent agreement with an MVPD applies with respect to one or more television stations, avoid the inconvenience of having to renegotiate the agreement every time a station changes ownership, and ensure certainty about which agreement applies in a change in ownership.

**The WNAC Retransmission Agreement**

17.     As part of its business, Cox enters into retransmission agreements to retransmit local broadcast television stations in various markets.

18.     Cox has a Retransmission Consent Agreement with Super Towers and WNAC that authorizes Cox to retransmit WNAC-TV's broadcast signal in the Providence, Rhode Island—New Bedford, Massachusetts television market ("WNAC Retransmission Agreement").

19.     The WNAC Retransmission Agreement became effective on March 1, 2017, was amended and extended on February 11, 2020, and expires at 11:59 p.m. Eastern Standard Time on February 28, 2023.

20.     Neither Super Towers, WNAC, nor Cox has terminated the WNAC Retransmission Agreement.

21.     Under Section 3(a) of the WNAC Retransmission Agreement, Super Towers and WNAC granted Cox the non-exclusive right to retransmit WNAC-TV's broadcast signal in the Providence, Rhode Island—New Bedford, Massachusetts market during the term of the WNAC Retransmission Agreement:

> 3.     Consent to Carriage; Signal Delivery.
>
> (a)     Broadcaster [Super Towers and WNAC] hereby grants to Operator [Cox] the non-exclusive right (but not the obligation, except as otherwise provided in Section 4 below) to receive, retransmit and distribute each Station's Digital Signal (including any portion thereof and whether licensed under the current call letters or any successor call letters thereto) in an analog, SD or HD format, over each System that (i) serves Subscribers

located within the applicable Station's Television Market, (ii) carries the Station as of the Effective Date, or (iii) is located in an area where such Station is deemed "significantly viewed" (as such term is defined in FCC Rules).

22.     Under Section 9(a) of the WNAC Retransmission Agreement, Super Towers and WNAC agreed for Cox to pay a monthly license fee per subscriber in exchange for the right to retransmit WNAC-TV's broadcast television signal:

> 9.     License Fee.
>
> (a)     Subject to the terms of this Section 9, Operator [Cox] shall pay a monthly license fee (the "License Fee") for each Top-4 Station as set forth in the table below. The License Fee for each such Station shall equal the product of the applicable monthly rate set forth below, subject to any adjustment in the applicable monthly rate in accordance with this Section 9(a), and the number of Subscribers authorized to and who do receive such Station from a Television Market System for the applicable month as calculated in Section 9(b) below. If a Station broadcasts a Multicast Feed affiliated with a Top-4 Network, Operator [Cox] will pay a separate License Fee for retransmission of such Multicast Feed. The License Fee shall be prorated for partial months (if any). Payment of the monthly License Fee shall be made within 45 days after the conclusion of the applicable calendar month. Included with each monthly payment shall be a monthly report indicating the aggregate number of Subscribers for the applicable Television Market Systems.

23.     Under Section 13(a) of the WNAC Retransmission Agreement, Super Towers and WNAC represented and warranted that they had and would maintain, for the term of the WNAC Retransmission Agreement, the necessary rights to operate WNAC-TV and to comply with the terms of the WNAC Retransmission Agreement:

> 13.     Representations and Warranties.
>
> (a)     By Broadcaster.     Broadcaster [Super Towers and WNAC] represents and warrants that: (i) it is an entity duly organized, validly existing and in good standing under the laws of the state of its formation, (ii) it has the requisite power and authority to execute and deliver this Agreement and to perform fully its obligations hereunder; (iii) it is under no contractual or other legal obligation that will interfere with its full, prompt, and complete performance hereunder; (iv) the individual executing this

Agreement on behalf of Broadcaster [Super Towers and WNAC] has the authority to do so; (v) it owns, controls or manages each Station; (vi) each Station transmits a good quality, full-power digital broadcast television signal and is licensed by the FCC to operate in the Television Market set for in <u>Attachment A</u>; (vii) it has all necessary rights, licenses, consents, permissions, authorizations and permits from all relevant authorities to operate the Stations and comply with the terms of this Agreement and, during the Term, it shall continue to maintain or obtain the same; and (viii) it is in material compliance with all applicable laws and FCC rules.

24.     Under Section 15(a) of the WNAC Retransmission Agreement, Super Towers, WNAC, and Cox have the right to early termination, upon written notice, only if the other party has made a material misrepresentation or has materially breached its duties under the WNAC Retransmission Agreement:

> 15.     <u>Termination</u>.
>
> (a)      Either Broadcaster [Super Towers and WNAC] or Operator [Cox] may terminate this Agreement, effective no earlier than thirty (30) days after written notice to the other party, if the other has made a material misrepresentation or has materially breached its duties or obligations hereunder, and such misrepresentation or breach is not cured within fifteen (15) days of such notice; <u>provided</u>, that if such breach is confined to a System and/or Station, or to a limited number of Systems and/or Stations, then the non-breaching party shall have the right to terminate this Agreement only as to the affected System(s) and/or Stations; and, <u>provided</u>, <u>further</u>, that if such breach giving rise to the right of termination cannot reasonably be cured within fifteen (15) days, but the party seeking to cure such breach has commenced good-faith efforts to cure such breach, then the cure period shall be extended for an additional fifteen (15) days.

25.     Under Section 18(b) of the WNAC Retransmission Agreement, if Super Towers and/or WNAC sell, transfer, assign, or otherwise dispose of its ownership interest in one or more stations to a third party (defined as a "Station Transferee"), then at Cox's request, Super Towers and WNAC shall require the Station Transferee to assume the WNAC Retransmission Agreement, to agree to abide by the terms through the remainder of the term, and to agree that the terms supersede any conflicting provision in any other retransmission consent agreement:

18.    <u>Assignments: Divested Systems and Stations.</u>

(b)    This Agreement may not be assigned by Broadcaster [Super Towers and WNAC] without the prior written consent of Operator [Cox], which consent shall not be unreasonably withheld, conditioned or delayed: <u>provided</u>, that Broadcaster [Super Towers and WNAC] may assign this Agreement without the consent of Operator [Cox] (but upon prior written notice to Operator [Cox]) to (i) any Broadcaster Entity, or (ii) any entity acquiring all or substantially all of the assets of Broadcaster [Super Towers and WNAC] or any Station(s); <u>provided</u>, <u>further</u>, that any assignee assumes all of Broadcaster's [Super Towers and WNAC's] obligations arising hereunder with respect to the applicable Station(s). In the event of any valid assignment of this Agreement by Broadcaster [Super Towers and WNAC], Broadcaster [Super Towers and WNAC] shall be relieved of all obligations arising thereafter and Operator [Cox] shall look solely to the assignee for enforcement of such obligations. Notwithstanding the foregoing, if Broadcaster [Super Towers and WNAC] sells, transfers, assigns or otherwise disposes of its ownership interest in one or more Stations to a third party (the "<u>Station Transferee</u>"), then at Operator's [Cox's] request, Broadcaster [Super Towers and WNAC] shall require such Station Transferee (i) to assume this Agreement with respect to such Station(s) and the applicable terms and conditions hereof and agree to abide by the terms hereof through the remainder of the Term, regardless of whether Operator [Cox] has a retransmission consent agreement in effect with such Station Transferee for the carriage of other broadcast television signals (and regardless of any conflicting "after-acquired station" language contained therein to the contrary, and (ii) to agree that the terms herein shall supersede any conflicting provision in any such other retransmission consent agreement, regardless of which agreement was signed later and regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements[.]

26.    By the plain and ordinary terms in Section 18(b) of the WNAC Retransmission Agreement, Super Towers and WNAC shall require a Station Transferee to assume and agree to the WNAC Retransmission Agreement, "regardless of whether Operator [Cox] has a separate retransmission consent agreement in effect" with a Station Transferee, "regardless of any conflicting 'after-acquired station' language" in any such agreement, "regardless of which agreement was signed later," and "regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements."

27.     Cox, Super Towers, and WNAC included the specific provisions in Section 18(b) of the WNAC Retransmission Agreement—including the terms "regardless of whether Operator [Cox] has a separate retransmission consent agreement in effect" with a Station Transferee, "regardless of any conflicting 'after-acquired station' language" in any such agreement, "regardless of which agreement was signed later," and "regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements"—over more general provisions in other retransmission agreements.

28.     Under Section 14(a) of the WNAC Retransmission Agreement, Super Towers and WNAC shall indemnify and hold harmless Cox against any third-party claims, liability, causes of action, and costs (including reasonable attorneys' fees) arising from, or in connection with, the breach by Super Towers and WNAC of any of its covenants, representations, warranties, or agreements contained in the WNAC Retransmission Agreement:

> 14.     <u>Indemnification</u>.
>
> (a)     Broadcaster [Super Towers and WNAC] shall indemnify and hold harmless Operator [Cox], each Operator Entity, each System, and the officers, directors, employees, shareholders, members, representatives and other agents of each from and against any third-party claims, liability, causes of action, and costs (including reasonable attorneys' fees) ("Losses") arising from, or in connection with, (i) the breach by Broadcaster [Super Towers and WNAC] of any of its covenants, representations, warranties or agreements contained herein and/or (ii) any programming or other content provided by Broadcaster [Super Towers and WNAC] pursuant to or in connection with this Agreement, including, but not limited to, any suit or proceeding for libel, slander, defamation, invasion of property or privacy rights, or violation of trademark, patent, copyright or other intellectual property rights.

29.     Under Section 20 of the WNAC Retransmission Agreement, Cox, Super Towers, and WNAC agreed their entire agreement and understanding were contained in the WNAC Retransmission Agreement:

> This Agreement constitutes the entire agreement and understanding between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous oral or written agreements and representations between the parties, including, without limitation, all other amendments, term sheets, and other agreements between Operator [Cox] or an Operator Entity and Broadcaster [Super Towers and WNAC] or a Broadcaster Entity . . . .

**The Mission Sale, and Super Towers and WNAC's Representations**

30.     On or around November 5, 2020, Super Towers and WNAC informed Cox that Super Towers intended to assign the FCC broadcast license and sell the ownership interest in WNAC-TV to Mission Broadcasting, Inc. ("Mission").

31.     In their November 5, 2020 letter, Super Towers and WNAC represented to Cox that they understood and intended to comply with their obligations under Section 18(b) of the WNAC Retransmission Agreement. Super Towers and WNAC stated that on the closing date of the transaction Super Towers (and its wholly owned subsidiary, WNAC) intends to assign to Mission the WNAC Retransmission Agreement.

32.     On November 16, 2020, Super Towers and WNAC again represented to Cox that they understood and intended to comply with their obligations under Section 18(b) of the WNAC Retransmission Agreement. Super Towers and WNAC stated to Cox that as part of the closing, Super Towers will assign to Mission and Mission will assume the WNAC Retransmission Agreement.

33.     On December 10, 2020, Cox provided Super Towers and WNAC with its formal request and consent to assign the WNAC Retransmission Agreement to Mission following consummation of the sale under Section 18(b) of the Agreement.

**Super Towers and WNAC's Breaches and Unfair and Deceptive Acts**

34.     Contrary to their contractual and legal obligations, and despite their repeated representations to Cox, on or around December 18, 2020, Super Towers and WNAC stated to Cox that WNAC-TV will comprise an "after-acquired" station under the retransmission agreement in place between Mission and Cox, instead of Mission assuming the WNAC Retransmission Agreement.

35.     On or around December 29, 2020, Cox notified Super Towers and WNAC that they would breach the WNAC Retransmission Agreement by failing to require Mission to assume and agree to the WNAC Retransmission Agreement.

36.     On or around January 12, 2021, Cox further notified Super Towers and WNAC that breach of the WNAC Retransmission Agreement would cause estimated minimum damages through February 28, 2023 (i.e., the remaining term of the Agreement) of approximately $4 million in increased licensing fees.

37.     Despite multiple requests, Super Towers and WNAC refused to meet with Cox to resolve the contractual and legal dispute and concealed material information about the proposed transaction from Cox, including assignment and assumption of the WNAC Retransmission Agreement.

38.     On or around June 18, 2021, Super Towers and WNAC notified Cox of the consummation of the sale of WNAC-TV to Mission effective on June 16, 2021, and did not state that Super Towers and WNAC had assigned nor that Mission had assumed and agreed to the WNAC Retransmission Agreement.

39.     On or around June 18, 2021, Mission notified Cox that on June 16, 2021, Mission had consummated Mission's acquisition from Super Towers of WNAC-TV, and also did not state

that Super Towers and WNAC had assigned nor that Mission had assumed and agreed to the WNAC Retransmission Agreement. Mission instead stated to Cox that effective on June 16, 2021, the station will now be governed by a retransmission agreement with Mission and that Cox should pay higher license fees for WNAC-TV under the terms of the retransmission agreement with Mission.

40.     Super Towers and WNAC sold, transferred, assigned, or otherwise disposed of their ownership interest in the station to Mission and knew that Mission was a Station Transferee under Section 18(b) of the WNAC Retransmission Agreement.

41.     Super Towers and WNAC knew the plain and ordinary terms of Section 18(b) of the WNAC Retransmission Agreement required Super Towers and WNAC to assign and to have Mission assume and agree to the WNAC Retransmission Agreement.

42.     Super Towers and WNAC knew the specific provisions in Section 18(b) of the WNAC Retransmission Agreement—including the terms "regardless of whether Operator [Cox] has a separate retransmission consent agreement in effect" with a Station Transferee, "regardless of any conflicting 'after-acquired station' language" in any such agreement, "regardless of which agreement was signed later," and "regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements"—were included over more general provisions in the retransmission agreement with Mission.

43.     Super Towers and WNAC knew the WNAC Retransmission Agreement was negotiated and understood with Cox that the WNAC Retransmission Agreement included the specific provisions of Section 18(b) of the WNAC Retransmission Agreement addressing which retransmission agreement would govern the right to retransmit WNAC-TV's broadcast signal if

Super Towers and WNAC sold, transferred, assigned, or otherwise disposed of its ownership interest in the television station.

44.     Super Towers and WNAC knew the WNAC Retransmission Agreement was amended and extended on February 11, 2020, later in time than the retransmission agreement between Cox and Mission.

45.     Super Towers and WNAC knew that failing to require Mission to assume and agree to the WNAC Retransmission Agreement would breach the WNAC Retransmission Agreement, cause an estimated minimum damages of approximately $4 million in increased licensing fees, and create potential claims of copyright infringement and FCC regulatory enforcement.

46.     Super Towers and WNAC thus knowingly and willfully failed to assign and to require Mission to assume and agree to the WNAC Retransmission Agreement, violated their representations to Cox, breached their contractual obligations with Cox, breached their duty of good faith and fair dealing with Cox, and committed unfair and deceptive acts against Cox.

## COUNT I
## Declaratory Judgment

47.     Cox repeats and realleges Paragraphs 1 through 46.

48.     This Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

49.     The WNAC Retransmission Agreement is a valid and enforceable contract to which Defendants are parties and under which they owe duties to Cox.

50.     Cox has been placed in apprehension of an ongoing dispute regarding the status and terms of Cox's retransmission rights with respect to the WNAC-TV broadcast signal because of Defendants' failure to assign and to require Mission to assume and agree to the WNAC Retransmission Agreement.

51.     Because of this uncertainty, there is a ripe controversy between Cox and Defendants regarding the effect of Section 18(b) of the WNAC Retransmission Agreement. Absent resolution of this controversy by the Court, Cox will face uncertainty regarding the status and terms of its bargained-for rights under the WNAC Retransmission Agreement.

52.     Additionally, there is a ripe controversy between Cox and WNAC with respect to the applicable licensing fees and other terms governing Cox's continued retransmission of the WNAC-TV broadcast signal. Absent a declaration of the parties' rights, Cox will face uncertainty regarding a claim for copyright infringement and FCC regulatory compliance.

53.     Cox seeks a declaration that (a) Defendants were required to assign and to have Mission assume and agree to the WNAC Retransmission Agreement; (b) the terms of the WNAC Retransmission Agreement remain in full force and effect until 11:59 p.m. ET on February 23, 2023, or until further order of this Court; (c) Cox does not infringe upon WNAC's copyright by continuing to retransmit the WNAC-TV broadcast signal under the WNAC Retransmission Agreement; and (d) Defendants shall indemnify and hold harmless Cox against any third-party claims, liability, causes of action, and costs (including reasonable attorneys' fees) arising from, or in connection with, the breach by Super Towers and WNAC of the WNAC Retransmission Agreement.

## COUNT II
## Breach of Contract

54.     Cox repeats and realleges Paragraphs 1 through 46.

55.     The WNAC Retransmission Agreement is a valid and enforceable contract to which Defendants are parties and under which they owe duties to Cox.

56.     Cox has performed all obligations under the WNAC Retransmission Agreement.

57.     Defendants have breached the WNAC Retransmission Agreement, including by failing to assign and to require Mission to assume and agree to the WNAC Retransmission Agreement under Section 18(b) of the Agreement.

58.     Defendants' breach of the WNAC Retransmission Agreement has caused damages to Cox in an amount to be determined at trial.

**COUNT III**
**Breach of the Duty of Good Faith and Fair Dealing**

59.     Cox repeats and realleges Paragraphs 1 through 46.

60.     Defendants have deprived Cox of the benefit of its bargain in the WNAC Retransmission Agreement.

61.     By structuring a transaction with Mission without assigning and requiring Mission to assume and agree to the WNAC Retransmission Agreement, Defendants thwarted the purpose of the WNAC Retransmission Agreement, including the bargained-for licensing and other terms with Cox to retransmit the WNAC-TV broadcast signal for the full term of the WNAC Retransmission Agreement.

62.     Defendants have breached not only their express contractual obligations but also their implied obligations that a reasonable person in Cox's position would be justified in understanding were included in the WNAC Retransmission Agreement, especially because of Defendants' repeated representations to Cox of their contractual and legal obligations under the WNAC Retransmission Agreement.

63.     Defendants' breach of their duty of good faith and fair dealing has caused damages to Cox in an amount to be determined at trial.

## COUNT IV
### Breach of Massachusetts Unfair Trade Practices Statute (M.G.L. ch. 93A, § 11)

64.     Cox repeats and realleges Paragraphs 1 through 46.

65.     Cox and Defendants were engaged in trade or commerce in Massachusetts.

66.     Defendants falsely represented to Cox that Defendants would assign and require Mission to assume and agree to the WNAC Retransmission Agreement.

67.     Super Towers and WNAC refused to meet with Cox to resolve the contractual and legal dispute and concealed material information about the proposed transaction from Cox, including assignment and assumption of the WNAC Retransmission Agreement.

68.     Defendants agreed with each other, and others, to violate the WNAC Retransmission Agreement by failing to assign and to require Mission to assume and agree to the WNAC Retransmission Agreement.

69.     Defendants knew that they were precluded from selling, transferring, assigning, or otherwise disposing of their interest in WNAC-TV without obtaining the assignment and assumption of the WNAC Retransmission Agreement.

70.     Defendants thus engaged in unfair or deceptive acts or practices in the conduct of trade or commerce.

71.     Defendants' unfair or deceptive acts or practices occurred primarily and substantially in Massachusetts, where both entities reside.

72.     Defendants' unfair or deceptive acts or practices were willful or knowing.

73.     Cox will suffer a loss of money as a result of Defendants' unfair or deceptive acts or practices in an amount to be determined at trial.

### JURY DEMAND

Cox demands a trial by jury under Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CoxCom, LLC, d/b/a Cox Communications, requests that the Court find in its favor and against Defendants Super Towers, Inc. and WNAC, LLC, and grant the following relief:

A.  An order declaring that (a) Defendants were required to have Mission assume and agree to the WNAC Retransmission Agreement; (b) the terms of the WNAC Retransmission Agreement remain in full force and effect until 11:59 p.m. Eastern Standard Time on February 23, 2023, or until further order of this Court; (c) Cox does not infringe upon WNAC's copyright by continuing to retransmit the WNAC-TV broadcast signal under the terms of the WNAC Retransmission Agreement; and (d) Defendants shall indemnify and hold harmless Cox against any third-party claims, liability, causes of action, and costs (including reasonable attorneys' fees) arising from, or in connection with, the breach by Super Towers and WNAC of the WNAC Retransmission Agreement;

B.  Compensatory damages;

C.  Treble damages under M.G.L. ch. 93A, § 11;

D.  Attorneys' fees and costs under M.G.L. ch. 93A, § 11;

E.  Pre- and post-judgment interest; and

F.  Such other and further relief as the Court may deem appropriate.

Dated: July 7, 2021                          Respectfully submitted,

                                             */s/ Jeffrey W. Gordon*
                                             Patricia Brown Holmes (*pro hac vice* pending)
                                             Brian O'Connor Watson (*pro hac vice* pending)
                                             Allison N. Siebeneck (*pro hac vice* pending)
                                             Jeffrey W. Gordon
                                             RILEY SAFER HOLMES & CANCILA LLP
                                             70 W. Madison Street, Suite 2900
                                             Chicago, IL 60602
                                             (312) 471-8700
                                             pholmes@rshc-law.com
                                             bwatson@rshc-law.com
                                             asiebeneck@rshc-law.com
                                             jgordon@rshc-law.com

                                             *Counsel for CoxCom, LLC,*
                                             *d/b/a Cox Communications*