**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COXCOM, LLC, d/b/a COX COMMUNICATIONS, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-11124-DJC |
| SUPER TOWERS, INC., and WNAC, LLC, | |
| Defendants. | |

## PLAINTIFF COXCOM, LLC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS EMERGENCY MOTION FOR DECLARATORY JUDGMENT

Plaintiff CoxCom, LLC, d/b/a Cox Communications, ("Cox") submits this statement of undisputed facts in support of its emergency motion for declaratory judgment against Defendants Super Towers, Inc. ("Super Towers") and WNAC, LLC ("WNAC"):

| UNDISPUTED FACTS | DEFENDANTS' RESPONSE |
|---|---|
| 1. Effective March 1, 2017, Cox entered into a retransmission consent agreement ("WNAC Agreement") with Super Towers and WNAC.<br><br>*See* Declaration of Chris Tygh ("Tygh Decl."), ¶ 11, Ex. 1. | |
| 2. The WNAC Agreement grants Cox the non-exclusive right to retransmit the WNAC-TV broadcast signal in the Providence, Rhode Island—New Bedford, Massachusetts market during the term of the WNAC Agreement.<br><br>*See* Tygh Decl., ¶ 14, Ex. 1. | |
| 3. Section 2 of the 2017 WNAC Agreement states: "The term of this Agreement shall . . . expire at 11:59 | |

| | |
|---|---|
| p.m. prevailing local time on February 29, 2020 . . . ." <br><br> *See* Tygh Decl., ¶ 14, Ex. 1 § 2. | |
| 4.  Cox, Super Towers, and WNAC amended and extended the WNAC Agreement on February 11, 2020. <br><br> *See* Tygh Decl., ¶ 11, Ex. 2. | |
| 5.  According to the amended and extended WNAC Agreement, the "expiration date of February 29, 2020 [under the 2017 agreement], is hereby deleted in its entirety and the following inserted therefor: 'February 28, 2023.'" <br><br> *See* Tygh Decl., Ex. 2. | |
| 6.  Under the WNAC Agreement, Cox agreed to pay Super Towers and WNAC a monthly license fee per subscriber in exchange for the right to retransmit the WNAC-TV broadcast television signal. <br><br> *See* Tygh Decl., Ex. 1 § 3(a), 9(a). | |
| 7.  At the time Cox and Defendants entered into the WNAC Agreement in 2017, "after-acquired station" clauses were common in the industry. <br><br> *See* Tygh Decl., ¶¶ 8–9, 23–25. | |
| 8.  After-acquired station and assignment provisions in retransmission consent agreements govern how an owner's television station(s) are treated upon the purchase or sale of a station. <br><br> *See* Tygh Decl., ¶ 9. | |

| | |
|---|---|
| 9. After-acquired station and assignment provisions in retransmission consent agreements ensure that only one transmission consent agreement with a multichannel video programming distributor applies with respect to one or more television stations.<br><br>*See* Tygh Decl., ¶ 9. | |
| 10. After-acquired station and assignment provisions in retransmission consent agreements avoid the inconvenience of having to renegotiate the agreement every time a station changes ownership.<br><br>*See* Tygh Decl., ¶ 9. | |
| 11. After-acquired station and assignment provisions in retransmission consent agreements ensure certainty about which agreement applies in a change in ownership.<br><br>*See* Tygh Decl., ¶ 9. | |
| 12. At the time Cox and Defendants entered into the WNAC Agreement in 2017, Defendants and their counsel knew that Cox had entered into other retransmission agreements with other station owners.<br><br>*See* Tygh Decl., ¶¶ 8–9, 23–25. | |
| 13. In 2017, Chris Tygh, the Vice President of Content Acquisition at Cox, negotiated the WNAC Agreement with an attorney named Jack Goodman, who represented Super Towers and WNAC.<br><br>*See* Tygh Decl., ¶ 23. | |

| | |
|---|---|
| 14. In 2020, Mr. Tygh, on behalf of Cox, negotiated the amended and extended WNAC Agreement with Mr. Goodman and another attorney, Chris Sullivan, who represented Super Towers and WNAC.<br><br>*See* Tygh Decl., ¶ 28. | |
| 15. During both the 2017 and 2020 negotiations, Mr. Tygh was involved in establishing and meeting the budget for Cox's retransmission consent deals.<br><br>*See* Tygh Decl., ¶ 26. | |
| 16. During both the 2017 and 2020 negotiations, it was a crucial component of Cox's bargaining position that any agreement to retransmit the WNAC station had to guarantee that any future station purchaser would be bound by the terms of the WNAC Agreement, including that agreement's rates, for its entire term, not any pre-existing agreement Cox may have had with that owner for other stations.<br><br>*See* Tygh Decl., ¶ 26. | |
| 17. Cox and Super Towers and WNAC negotiated an assignment provision that reflected the bargaining positions.<br><br>*See* Tygh Decl., ¶¶ 26–28. | |
| 18. Under Section 18(b) of the WNAC Agreement, if Super Towers and/or WNAC sell, transfer, assign, or otherwise dispose of its ownership interest in one or more stations to a third party (defined as a "Station | |

Transferee"), then at Cox's request, Super Towers and WNAC shall require the Station Transferee to assume the WNAC Agreement, to agree to abide by the terms through the remainder of the term, and to agree that the terms supersede any conflicting provision in any other retransmission consent agreement:

18.    Assignments: Divested Systems and Stations.

(b)    This Agreement may not be assigned by Broadcaster [Super Towers and WNAC] without the prior written consent of Operator [Cox], which consent shall not be unreasonably withheld, conditioned or delayed: provided, that Broadcaster [Super Towers and WNAC] may assign this Agreement without the consent of Operator [Cox] (but upon prior written notice to Operator [Cox]) to (i) any Broadcaster Entity, or (ii) any entity acquiring all or substantially all of the assets of Broadcaster [Super Towers and WNAC] or any Station(s); provided, further, that any assignee assumes all of Broadcaster's

| | |
|---|---|
| [Super Towers and WNAC's] obligations arising hereunder with respect to the applicable Station(s). In the event of any valid assignment of this Agreement by Broadcaster [Super Towers and WNAC], Broadcaster [Super Towers and WNAC] shall be relieved of all obligations arising thereafter and Operator [Cox] shall look solely to the assignee for enforcement of such obligations. Notwithstanding the foregoing, if Broadcaster [Super Towers and WNAC] sells, transfers, assigns or otherwise disposes of its ownership interest in one or more Stations to a third party (the "Station Transferee"), then at Operator's [Cox's] request, Broadcaster [Super Towers and WNAC] shall require such Station Transferee (i) to assume this Agreement with respect to such Station(s) and the applicable terms and conditions hereof and agree to abide by the terms hereof through the remainder of the | |

| | |
|---|---|
| Term, regardless of whether Operator [Cox] has a retransmission consent agreement in effect with such Station Transferee for the carriage of other broadcast television signals (and regardless of any conflicting "after-acquired station" language contained therein to the contrary, and (ii) to agree that the terms herein shall supersede any conflicting provision in any such other retransmission consent agreement, regardless of which agreement was signed later and regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements[.]<br><br>*See* Tygh Decl., Ex. 1 § 18(b). | |
| 19. The WNAC Agreement provides that Super Towers and WNAC must indemnify and hold harmless Cox for any claims or losses arising out of their breach of the agreement:<br><br>14.<u>Indemnification</u>.<br><br>(a)     Broadcaster [Super Towers and WNAC]      shall indemnify and hold harmless     Operator | |

| | |
|---|---|
| [Cox], each Operator Entity, each System, and the officers, directors, employees, shareholders, members, representatives and other agents of each from and against any third-party claims, liability, causes of action, and costs (including reasonable attorneys' fees) ("Losses") arising from, or in connection with, (i) the breach by Broadcaster [Super Towers and WNAC] of any of its covenants, representations, warranties or agreements contained herein and/or (ii) any programming or other content provided by Broadcaster [Super Towers and WNAC] pursuant to or in connection with this Agreement, including, but not limited to, any suit or proceeding for libel, slander, defamation, invasion of property or privacy rights, or violation of trademark, patent, copyright or other intellectual property rights.<br><br>*See* Tygh Decl., Ex. 1 § 14(a). | |
| 20. In November 2020, Super Towers and WNAC informed Cox that Super | |

8

| | |
|---|---|
| Towers intended to assign the FCC broadcast license of and sell the ownership interest in the WNAC station to third party Mission Broadcasting, Inc. ("Mission").<br><br>*See* Tygh Decl., ¶ 29. | |
| 21. In an unrelated and separate transaction, Cox entered into a retransmission agreement with Mission on December 28, 2018 to retransmit the broadcast signal of other TV stations owned by Mission ("Mission Agreement").<br><br>*See* Tygh Decl., ¶ 29. | |
| 22. Section 19 of the Mission Agreement includes an "after-acquired station" clause:<br><br>Except as otherwise provided below, for the avoidance of doubt, the provisions of this Section 19 shall control all retransmission of television stations acquired by Broadcaster . . . after the date hereof on all Eligible Systems owned, built or acquired by Operator during the term notwithstanding any conflicting provisions contained in any agreements between Operator and any third party, and shall apply regardless of whether Broadcaster assumes or accepts assignment of any such agreements.<br><br>*See* Tygh Decl., ¶ 29, Ex. 3 § 19. | |
| 23. Section 18(b) of the WNAC Agreement is more specific than | |

| | |
|---|---|
| Section 19 of the Mission Agreement.<br><br>*See* Tygh Decl., Ex. 2 § 18(b), Ex. 3 § 19. | |
| 24. The WNAC Agreement was amended and extended on February 11, 2020, after the Mission Agreement was entered into on December 28, 2018.<br><br>*See* Tygh Decl., Ex. 2, Ex. 3. | |
| 25. On November 5, 2020, Super Towers and WNAC wrote to Cox that "Super Towers, Inc. (and its wholly owned subsidiary, WNAC, LLC) intends to assign to Mission the Retransmission Agreement effective on March 1, 2014 (as amended on March 1, 2017 and February 11, 2020) by and between Super Towers . . . and CoxCom…."<br><br>*See* Tygh Decl., ¶ 31 & Ex. 4. | |
| 26. On November 5, 2020, Super Towers and WNAC wrote to Cox that "WNAC will notify Cox Communications when a closing date has been set."<br><br>*See* Tygh Decl., ¶ 31 & Ex. 4. | |
| 27. On November 16, 2020, Super Towers and WNAC wrote to Cox that "as part of the closing, Super Towers will assign to Mission, and Mission will assume, the RTC Agreement."<br><br>*See* Tygh Decl., ¶ 32 & Ex. 5. | |
| 28. On November 16, 2020, Super Towers and WNAC instructed Cox | |

| | |
|---|---|
| to contact Chris Sullivan if Cox had "any questions regarding . . . Super Towers' assignment of the RTC Agreement to Mission at closing." *See* Tygh Decl., ¶ 32 & Ex. 5. | |
| 29. Based on Super Towers' and WNAC's representation that they would assign to Mission and require Mission to Assume the WNAC Agreement, Cox consented to the assignment and formally requested that Mission assume the WNAC Agreement. *See* Tygh Decl., ¶ 33 & Ex, 6. | |
| 30. On December 18, 2020, Super Towers and WNAC wrote to Cox that "WNAC-TV will comprise an 'after-acquired' station under the Mission/Cox retransmission consent agreement, instead of its assuming the Super Towers/Cox RTC Agreement . . . ." *See* Tygh Decl., ¶ 34 & Ex. 7. | |
| 31. On December 29, 2020, Cox wrote to Super Towers and Mission that "consummation of the Proposed Transaction [Mission's acquisition of WNAC-TV] absent the assignment to and assumption of the WNAC RTC Agreement by Mission will constitute a breach by Super Towers of the WNAC RTC Agreement." *See* Tygh Decl., ¶ 35–36 & Exs. 8. | |
| 32. On December 29, 2020, Cox wrote to Super Towers and Mission that "Section 18(b) of the WNAC RTC Agreement unambiguously and explicitly conditions any sale, | |

| | |
|---|---|
| transfer, assignment, or disposition of Super Towers' ownership interest in the Station on Mission's assumption of the WNAC RTC Agreement, its applicable terms and conditions, and Mission's agreement to abide by terms of the WNAC RTC Agreement through the remainder of its Term."<br><br>*See* Tygh Decl., ¶ 35–36 & Ex. 8. | |
| 33. On December 29, 2020, Cox wrote to Super Towers and Mission that their obligation to assign the WNAC Agreement to Mission "includes Mission's agreement that the terms of the WNAC RTC Agreement supersede those of the Mission RTC Agreement regardless of any conflicting provisions therein that purport to supersede the WNAC RTC Agreement."<br><br>*See* Tygh Decl., ¶ 35–36 & Ex. 8. | |
| 34. On December 29, 2020, Cox wrote to Super Towers and Mission that their obligations under Section 18(b) of the WNAC Agreement "apply regardless of the Mission RTC Agreement, and regardless of any conflicting 'after-acquired station' language contained in it."<br><br>*See* Tygh Decl., ¶ 35–36 & Ex. 8. | |
| 35. On December 29, 2020, Cox wrote to Super Towers and Mission that "Cox reasonably relied on Super Towers' repeated acknowledgements that it understood its obligations under Section 18(b) of the WNAC RTC Agreement and intended to comply with them." | |

| | |
|---|---|
| *See* Tygh Decl., ¶ 35–36 & Ex. 8. | |
| 36. On January 12, 2021, Cox wrote to Super Towers and Mission that "Cox intends to enforce its rights under the Agreements to the full extent allowed by the law" based on "Super Towers['] impending breach of the WNAC RTC Agreement."<br><br>*See* Tygh Decl., ¶ 35–36 & Ex. 9. | |
| 37. On January 12, 2021, Cox wrote to Super Towers and Mission that if Super Towers breached the WNAC RTC Agreement by failing to require Mission to assume that contract, and should Cox accordingly need to pay Mission for the WNAC retransmissions at the higher rate under the Mission Agreement, then "Cox estimates the minimum damages it will suffer through February 28, 2023 (i.e., through the remaining term of the WNAC RTC Agreement) to be approximately $4,000,000.00."<br><br>*See* Tygh Decl., ¶ 36 & Ex. 9. | |
| 38. On January 12, 2021, Cox requested that Super Towers and Mission contact Cox if Super Towers or Mission was "interested in discussing a potential resolution . . . prior to consummation of the Proposed Transaction."<br><br>*See* Tygh Decl., ¶ 35–36 & Ex. 9. | |
| 39. On January 18, 2021, Mission responded to Cox's letter of December 29, 2020, stating that "Mission cannot be bound to the terms of any agreement between Cox and Super Towers to which it is not a | |

| | |
|---|---|
| party and which it is not accepting or assuming through the proposed transaction." *See* Tygh Decl., ¶ 37 & Ex. 10. | |
| 40. In its January 18, 2021 letter, Mission asserted that "the Mission Agreement, to which Cox is a party, governs any retransmission of subsequently-acquired Super Towers, LLC stations and entities by Cox." *See* Tygh Decl., ¶ 37 & Ex. 10. | |
| 41. Super Towers and WNAC neither responded in writing to Cox's breach notice nor notified Cox when the closing date had been set. *See* Tygh Decl., ¶ 38. | |
| 42. On June 18, 2021, Mission wrote to Cox that "on June 16, 2021, Mission has consummated its acquisition from Super Towers, Inc. the following television broadcast station: WNAC-TV, Providence, RI ('Acquired Station'). In accordance with your Mission Agreement, effective on June 16, 2021, your continued carriage of the Acquired Station will now be governed by your Mission Agreement." *See* Tygh Decl., ¶ 39 & Ex. 11. | |
| 43. On June 18, 2021, Mission wrote to Cox that "with respect to the Acquired Station effective on June 16, 2021: You should calculate your license fees for WNAC-TV per the terms of your retransmission agreement with Mission." *See* Tygh Decl., ¶ 39 & Ex. 11. | |

| | |
|---|---|
| 44. On June 21, 2021, Super Towers wrote to give Cox "notice of the sale of broadcast television station WNAC, Providence, Rhode Island (the 'Station') to Mission Broadcasting, Inc. ('Mission'). As of June 16, 2021 ('Effective Date'), Super Towers, Inc. is no longer the owner of the Station. Accordingly, as of the Effective Date, regardless of whether Mission may have assumed the Agreement with WNAC, LLC, Cox's carriage of the Station will thereafter be subject to either the terms of Mission's retransmission consent agreement with Cox including the 'after-acquired' station provisions thereof, or another agreement between Cox and Mission."<br><br>*See* Tygh Decl., ¶ 40 & Ex. 12. | |
| 45. Mission continues to maintain that as of June 16, 2021, Cox's retransmission of the WNAC station is subject to the Mission Agreement, including its higher rates.<br><br>*See* Tygh Decl., ¶ 39 & Ex. 11. | |
| 46. Both the WNAC Agreement and the Mission Agreement provide that the owner of the WNAC station must consent to Cox's re-broadcasting or else Cox will violate the station's copyrights.<br><br>*See* Tygh Decl., Ex. 1 §10; Ex. 3 § 6(a). | |
| 47. Cox's next scheduled payment to Mission is due August 16, 2021.<br><br>*See* Tygh Decl., ¶¶ 40, 42. | |

| | |
|---|---|
| 48. Defendants will not agree to terms related to the August 16, 2021 payment, despite multiple requests.<br><br>*See* Tygh Decl., ¶¶ 38, 42–44. | |
| 49. Cox has requested that Super Towers and WNAC indemnify and hold harmless Cox under the WNAC Agreement.<br><br>*See* Tygh Decl., ¶ 44; Ex. 15. | |
| 50. Super Towers and WNAC has not agreed to indemnify and hold harmless Cox.<br><br>*See* Tygh Decl., ¶ 44. | |
| 51. No party has terminated the WNAC Agreement.<br><br>*See* Tygh Decl., ¶ 12 & Ex. 1 § 18. | |

Dated: August 2, 2021                    Respectfully submitted,

*/s/ Brian O. Watson*
Patricia Brown Holmes (*pro hac vice*)
Brian O'Connor Watson (*pro hac vice*)
Allison N. Siebeneck (*pro hac vice*)
Jeffrey W. Gordon
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
bwatson@rshc-law.com
asiebeneck@rshc-law.com
jgordon@rshc-law.com

*Counsel for CoxCom, LLC,*
*d/b/a Cox Communications*

## CERTIFICATE OF SERVICE

I certify that on August 2, 2021, the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record and will likewise be available electronically to any attorneys of record who appear in this matter, and that a Word version of this document was sent by electronic mail to Defendants' counsel of record.

/s/ *Brian O. Watson*
Counsel for Plaintiff CoxCom, LLC,
d/b/a Cox Communications