# EXHIBIT 10

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Matthew Solum, P.C.<br>To Call Writer Directly:<br>+1 212 446 4688<br>matthew.solum@kirkland.com | 601 Lexington Avenue<br>New York, NY 10022<br>United States<br><br>+1 212 446 4800<br><br>www.kirkland.com | Facsimile:<br>+1 212 446 4900 |

January 18, 2021

**Via E-mail**

Gary S. Lutzker
Baker & Hostetler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
glutzker@bakerlaw.com

Re:   Response to Notice of Potential Breach of Retransmission Consent Agreements and Intentional Interference with Contractual Relations

Dear Gary:

Kirkland & Ellis, LLP represents Mission Broadcasting, Inc. ("Mission"). I write in response to the letter you sent on behalf of Cox Communications, Inc. ("Cox") dated December 29, 2020 and addressed to Mr. Dennis Thatcher, President of Mission.

The allegations raised in that letter are without merit because (i) Cox is bound by the retransmission consent agreement it entered into with Mission ("Mission RTC Agreement"), which unequivocally governs the contractual relationship between Cox and Mission; (ii) the language cited in the letter from Cox's retransmission consent agreement ("WNAC RTC Agreement") with Super Towers, LLC ("Super Towers") is not enforceable against Mission; (iii) Super Towers is not in breach of the WNAC RTC Agreement by failing to assign it to Mission; and (iv) Mission cannot be liable for tortious interference with the WNAC RTC Agreement.

*First*, Section 19 of the Mission RTC Agreement makes clear that its terms and conditions govern any and all retransmission by Cox of stations that Mission acquires after the date of its execution. Section 19(b) states that subsequently acquired stations "shall be included as a Station hereunder and shall be subject to the terms and conditions of this Agreement[.]". In addition, Section 19(c) unequivocally states that the Mission-Cox RTC Agreement supersedes any and all agreements between Cox and third parties, including agreements that Cox may have entered into with broadcasters like Super Towers that Mission subsequently acquires, notwithstanding any language in those agreements that may conflict with the Mission RTC Agreement or Section 19. It states:

# KIRKLAND & ELLIS LLP

Gary S. Lutzker
January 18, 2021
Page 2

> "All Systems and Stations.  Except as otherwise provided below, for the avoidance of doubt, <u>the provisions of this Section 19 shall control all retransmission of television stations acquired by Broadcaster</u> or an entity directly or indirectly controlling, controlled by or under common control with Broadcaster after the date hereof on all Eligible Systems owned, built or acquired by Operator during the term <u>notwithstanding any conflicting provisions contained in any agreements between Operator and any third party</u>, and shall apply regardless of whether Broadcaster assumes or accepts assignment of any such agreements."

Furthermore, Section 19(c) goes further, and clarifies that the terms of Section 19 govern retransmission by Cox of Mission's subsequently-acquired stations <u>even if</u> Mission were to assume any agreement between Cox and a third party with conflicting language:

> "[…] the provisions of this Section 19 shall control […] notwithstanding any conflicting provisions contained in any agreements between Operator and any third party, and <u>shall apply regardless of whether Broadcaster assumes or accepts assignment of any such agreements</u>."

Cox, as a party to this agreement, is bound by the language included in Section 19, which clearly supersedes any conflicting provisions in agreements between Cox and subsequently-acquired broadcasters like Super Towers.  Moreover, while Cox is bound by the terms of the Mission RTC Agreement, Mission cannot be bound to the terms of any agreement between Cox and Super Towers to which it is not a party and which it is not accepting or assuming through the proposed transaction.

*Second*, the language cited in the December 29, 2020 letter from the WNAC RTC Agreement is unenforceable against Mission.  As is noted above, Mission is not a party to this agreement, nor will it assume this agreement, and therefore it cannot be bound by its terms.  Cox is the only entity which is a party to both the Mission RTC Agreement and WNAC RTC Agreement.  To any extent that Cox agreed to conflicting provisions in each of these agreements, it alone bears the consequences of that conflict.

Moreover, the provision may be unenforceable on its face, given that it explicitly frustrates enforcement of other agreements that Cox has entered into.  Section 18(b) specifically contemplates that an acquirer of Super Towers may have a superseding retransmission consent agreement with Cox and nonetheless instructs Super Towers to enforce the terms of its own retransmission agreement against that acquirer nonetheless.  Section 18(b) states:

> "if Broadcaster sells, transfers, assigns or otherwise disposes of its ownership interest in one or more Stations to a third party (the "Station Transferee"), then at

# KIRKLAND & ELLIS LLP

Gary S. Lutzker
January 18, 2021
Page 3

>Operator's request, Broadcaster shall require such Station Transferee (i) to assume this Agreement with respect to such Station(s) and the applicable terms and conditions hereof and agree to abide by the terms hereof through the remainder of the Term, <u>regardless of whether Operator has a retransmission consent agreement in effect with such Station Transferee for the carriage of other broadcast television signals (and regardless of any conflicting "after-acquired station" language contained therein to the contrary</u>, and (ii) to agree that the terms herein shall supersede any conflicting provision in any such other retransmission consent agreement[.]"

Allowing such a provision to deprive Mission of its bargained-for contractual rights in the Mission RTC Agreement is unconscionable. It would allow Cox to agree to give rights to broadcasters like Mission when they acquire new stations while simultaneously eviscerating those rights through agreements that those broadcasters are not parties to. Moreover, it would allow Cox to selectively enforce the terms of either of the retransmission consent agreements it has with a broadcaster or a newly-acquired station, depending on which provides more favorable terms to Cox ex-post.

*Third*, Super Towers does not breach Section 18(b) of the WNAC RTC Agreement by failing to assign it to Mission. As is clearly established above, the Mission RTC Agreement, to which Cox is a party, governs any retransmission of subsequently-acquired Super Towers, LLC stations and entities by Cox, irrespective of whether Mission is assigned an agreement between Cox and a third party with conflicting language. Failure to assign the agreement is therefore irrelevant; Cox is bound to the terms and conditions of the Mission RTC Agreement in any event.

Accordingly, there is no basis for asserting that Super Towers has materially breached the terms of the WNAC RTC Agreement with Cox.

*Fourth,* Mission cannot be held liable for tortious interference with the WNAC RTC Agreement regardless of whether or not Super Towers is found to have breached it. As is discussed extensively above, Super Towers is not in breach of the WNAC RTC Agreement even if it fails to assign that agreement to Mission. If Super Towers has not breached the WNAC RTC Agreement, as a matter of law, Mission cannot be liable for tortious interference with Super Towers' performance under the agreement.[1]

---

[1] *See DISH Network L.L.C. v. Cox Media Grp., LLC*, 2020 WL 4053604, at *6 (N.D. Ill. July 20, 2020) ("As Defendants point out in their response, under New York law, "to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party." [citation omitted]. As

# KIRKLAND & ELLIS LLP

Gary S. Lutzker
January 18, 2021
Page 4

But, <u>even if</u> Super Towers is deemed to have breached the contract, Mission cannot be liable for tortious interference merely by refusing to assume an agreement it is not a party to. Such conduct encompasses Mission's legal right under the Mission RTC Agreement -- a legal right which was bargained for with the very party asserting a tortious interference claim against Mission. That does not rise to the level of "wrongful conduct" required to state a tortious interference claim under Delaware law, which governs the WNAC RTC Agreement.

For the foregoing reasons, Mission will proceed with its current plans to acquire certain assets of Super Towers without acquiring or assuming any retransmission agreements between Cox and Super Towers.

Please let us know if you would like to discuss this further.

                                                    Sincerely,

                                                    Matthew Solum, P.C.

---

previously discussed, DISH has not shown a reasonable likelihood of success on its claim that Cox breached the Retransmission Agreement, and thus its tortious interference claim also seems unlikely to succeed.").