**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COXCOM, LLC, d/b/a COX COMMUNICATIONS,<br><br>    Plaintiff,<br><br>v.<br><br>SUPER TOWERS, INC., and WNAC, LLC,<br><br>    Defendants. | Case No. 1:21-cv-11124-DJC |

## PLAINTIFF COXCOM LLC'S MEMORANDUM
## IN SUPPORT OF ITS EMERGENCY MOTION FOR SPEEDY HEARING

Plaintiff CoxCom LLC, d/b/a Cox Communications, ("Cox") submits this memorandum in support of its emergency motion for a speedy hearing by August 16, 2021 on Cox's request for declaratory judgment as set forth in Count I of the Complaint (D. 1) and the Emergency Motion for Declaratory Judgment (D. 17) under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

**I.     INTRODUCTION**

This action requires a speedy hearing and declaration of the rights and legal relations between Cox and Defendants Super Towers, Inc. ("Super Towers") and WNAC, LLC ("WNAC") as to the retransmission consent agreement governing broadcast television station WNAC-TV.  In June 2021, Defendants transferred ownership of WNAC-TV but failed to assign the agreement to WNAC-TV's buyer, as the agreement requires and Defendants promised. That failure destroys the bargained-for terms of the agreement for the rest of its term, expiring in February 2023; creates an immediate and ongoing risk that Cox must pay higher license fees for WNAC-TV's broadcast signal under the station's new ownership; and exposes Cox to legal claims if Cox continues to exercise its right to retransmit WNAC-TV's broadcast signal under the terms and rates of the

agreement negotiated with Defendants.  Because Defendants must ultimately indemnify and hold harmless Cox from any losses, but have refused to negotiate terms for the license fees due by August 16, 2021, a speedy hearing and declaratory judgment will streamline the issues and avoid unnecessary expense for the parties and the Court.

## II.    <u>FACTUAL BACKGROUND</u>

As the Complaint details, Cox entered into a retransmission consent agreement with Super Towers and WNAC that authorizes Cox to retransmit WNAC-TV's broadcast signal in the Nielsen-defined Providence, Rhode Island—New Bedford, Massachusetts television market ("WNAC Agreement").  Compl. ¶ 18.  The WNAC Agreement expires by its terms at 11:59 p.m. Eastern Standard Time on February 28, 2023.  *Id.* ¶ 19.  Under the WNAC Agreement, Cox agreed to pay Super Towers and WNAC a monthly license fee per subscriber in exchange for the right to retransmit WNAC-TV's broadcast television signal.  *Id.* ¶ 22.

Under Section 18(b) of the WNAC Agreement, the parties agreed to specific assignment terms and conditions: if Super Towers and/or WNAC sold, transferred, assigned, or otherwise disposed of its ownership interest in one or more stations to a third party (defined as a "Station Transferee"), then at Cox's request, Super Towers and WNAC must require the Station Transferee to assume the WNAC Agreement, to agree to abide by its terms through the rest of the contract term, and to agree that the terms of the WNAC Agreement supersede any conflicting provision in any other retransmission consent agreement.  *Id.* ¶ 25.  The parties also specifically agreed that this assignment provision applies regardless of whether Cox has a separate retransmission consent agreement in effect with the Station Transferee, "regardless of any conflicting 'after-acquired station' language in any such agreement," "regardless of which agreement was signed later," and "regardless of any conflicting provision in such other agreement that purports to supersede

conflicting provisions in other agreements." *Id.* ¶ 26. Super Towers and WNAC further agreed to indemnify and hold harmless Cox from any claims related to their breach of the WNAC Agreement. *Id.* ¶ 28.

In November 2020, Super Towers and WNAC informed Cox that Super Towers intended to assign the FCC broadcast license and sell its ownership interest in WNAC-TV to Mission Broadcasting, Inc. ("Mission"). *Id.* ¶ 30. Super Towers and WNAC repeatedly stated that Super Towers intended to assign the WNAC Agreement to Mission. *Id.* ¶¶ 31–32. On December 10, 2020, Cox provided Super Towers and WNAC with its formal request and consent to assign the WNAC Agreement to Mission following consummation of the sale under Section 18(b) of the Agreement. *Id.* ¶ 33.

On December 18, 2020, Super Towers and WNAC then advised Cox that they would not require Mission to assume the WNAC Agreement as part of the sale, and that WNAC-TV would constitute an "after-acquired" station under the retransmission agreement in place between Mission and Cox. *Id.* ¶ 24. Cox informed Super Towers and WNAC that they would breach the WNAC Agreement by failing to require Mission to assume and agree to the WNAC Agreement, and that the breach would cause estimated minimum damages through February 28, 2023 (i.e., the remaining term) of approximately $4 million in increased licensing fees. *Id.* ¶¶ 35–36. Despite this notice, Super Towers and WNAC consummated the sale of WNAC-TV to Mission effective June 16, 2021, without requiring Mission to assume and agree to the WNAC Agreement and without communicating with Cox before the sale. *Id.* ¶¶ 38–39.

Since the sale, Mission has stated that WNAC-TV will be considered an "after-acquired" station governed by a retransmission agreement between Mission and Cox, and that Cox must pay higher license fees for WNAC-TV under the terms of that agreement. *Id.* ¶ 39. On August 16,

2021, Cox's first payment of retransmission consent fees following the sale of WNAC-TV will come due, and Defendants then must indemnify and hold harmless Cox from any losses under the WNAC Agreement for their failure to assign. *Id.* ¶ 28.

## III.   LEGAL STANDARD

The Declaratory Judgment Act "serves a useful policy purpose when a declaratory plaintiff will avoid accruing damages or further loss through immediate clarification of the legal relations between parties." *Mueller Sys., LLC v. Teti*, 199 F. Supp. 3d 270, 281 (D. Mass. 2016). The Act therefore authorizes the district court to issue declaratory relief "upon the filing of an appropriate pleading." 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). Recognizing that a request for declaratory judgment often arises from "undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion[.]" Fed. R. Civ. P. 57, advisory committee notes. Accordingly, Rule 57 provides for a "speedy hearing" to resolve declaratory judgment claims in summary fashion. Fed. R. Civ. P. 57 ("The court may order a speedy hearing of a declaratory-judgment action.").

District courts exercise broad discretion in deciding whether expedited proceedings are warranted under Rule 57, which stems from their "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Cty. of Butler v. Wolf*, No. 2:20-cv-677, 2020 WL 2769105, at *2 (W.D. Pa. May 28, 2020); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Though Rule 57 does not identify specific criteria to be considered in ordering a speedy hearing, courts typically consider whether expediting

determination of the requested declaratory relief "will streamline and narrow issues for discovery and trial, even if it will not entirely resolve the controversy." *Walsh/Granite JV v. HDR Eng'g, Inc.*, No. 2:17-cv-558, 2018 WL 10228381, at *1 (W.D. Pa. Jan. 3, 2018); *Allergan v. Valeant Pharms., Inc.*, No. SACV 14-1214 DOC (ANx), 2014 WL 4181457, at *3 (C.D. Cal. Aug. 21, 2014) (same); *Klungvedt v. Unum Grp.*, No. 2:12-cv-00651 JWS, 2012 WL 2368623, at *3 (D. Ariz. June 21, 2012) ("A showing of urgency is not required by the relevant statute or the law of this circuit.  However, expedited consideration of this issue could save the court and the parties tremendous expense.").  Courts also consider whether the determination is largely one of law, such that factual issues are not predominant. *Cty. of Butler*, 2020 WL 2769105, at *2.  Unlike preliminary injunction proceedings, a party "need not establish immediate and irreparable injury to justify expedited review under Rule 57." *Id.* at *2 n.3.

## IV.   <u>ARGUMENT</u>

Cox seeks a speedy hearing on its request for a declaratory judgment clarifying the legal relationship between Cox and Defendants with respect to the WNAC Agreement.  By August 16, Cox must make its first payment of license fees for WNAC-TV following the station's sale to Mission.  This initial domino will set in motion of chain of consequences: if Cox pays the lower rates under the WNAC Agreement, Cox will risk exposure to claims for breach of contract, copyright infringement, and/or FCC regulatory enforcement.  At the same time, Defendants will have to indemnify and hold harmless Cox for any claims arising out of their failure to assign and require Mission to assume and agree to the WNAC Agreement.  But Defendants have refused to negotiate any terms related to the payment.[1]  Thus, expedited review under Rule 57 is appropriate

---

[1] Cox anticipates that if it pays the higher rates, Defendants will argue the payment is an admission by Cox and the voluntary payment doctrine bars recovery. *See W. Nat. Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164, 169 (Del. 1964) ("[P]ayment voluntarily made with full knowledge of the facts

here because early resolution of the parties' respective rights and obligations under the WNAC Agreement will avoid unnecessary expense and complication of these—and potential future related—proceedings.  *See Klungvedt*, 2012 WL 2368623, at *3.

Additionally, Cox's declaratory judgment claim involves a legal question which will be determined by interpreting the relevant contract language.  *See Cty. of Butler*, 20201 WL 2769105, at *2.  The declaratory judgment turns on a single provision: Section 18(b), which obligates Super Towers and WNAC to require a Station Transferee to assume the WNAC Agreement, to agree to abide by its terms through the rest of the contract period, and to agree that the terms supersede any conflicting provision in any other retransmission consent agreement. Compl. ¶ 25.  The parties' rights and duties under Section 18(b) are defined by the plain and ordinary language of the WNAC Agreement, and this Court therefore may issue a declaratory judgment by interpreting the four corners of the contract.  Because factual issues do not predominate, and discovery is unnecessary to this legal question, this factor also supports expedited review.

Finally, early resolution will significantly streamline the issues for discovery and trial, as the Court's interpretation and effect of the WNAC Agreement will decide critical elements of Cox's other claims.  *See Walsh/Granite JV*, 2018 WL 10228381, at *1.  For example, in the breach of contract claim, a declaration regarding the parties' legal rights and obligations under Section 18(b) will effectively determine whether Defendants breached the WNAC Agreement by failing to assign and require Mission to assume and agree to the Agreement.  That declaration will also determine whether Defendants have deprived Cox of the benefit of its bargain in the WNAC Agreement, as relevant to Cox's claim for the breach of the duty of good faith and fair dealing.

---

cannot be recovered, in the absence of a contract to repay. A payment under protest is not necessarily involuntary, nor is it made so by unilaterally calling it involuntary at the time of payment." (citations omitted)).

And the determination will certainly be relevant to deciding whether Defendants knowingly engaged in unfair or deceptive trade practices, as required for Cox's statutory claim under MGL c. 93A, § 11.

## V.   __CONCLUSION__

For these reasons, Cox requests that the Court grant the Emergency Motion for Speedy Hearing and the following relief:

(1) an expedited briefing schedule on Cox's Emergency Motion for Declaratory Judgment, including that Defendants shall file any opposition related to the plain language of the WNAC Agreement within 7 days, and Cox shall file a reply with leave of court;

(2) a speedy hearing on Cox's request for declaratory judgment by August 16, 2021; and

(3) any further relief as the Court deems just and equitable.

Dated: August 2, 2021            Respectfully submitted,

_/s/ Brian O'Connor Watson_
Patricia Brown Holmes (_pro hac vice_)
Brian O'Connor Watson (_pro hac vice_)
Allison N. Siebeneck (_pro hac vice_)
Jeffrey W. Gordon
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
bwatson@rshc-law.com
asiebeneck@rshc-law.com
jgordon@rshc-law.com

_Counsel for CoxCom, LLC,_
_d/b/a Cox Communications_

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 2, 2021, the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record and will likewise be available electronically to any attorneys of record who appear in this matter.

/s/ *Brian O'Connor Watson*
Counsel for Plaintiff CoxCom, LLC,
d/b/a Cox Communications