# EXHIBIT 1
# (Redacted)

EXECUTION COPY

RETRANSMISSION CONSENT AGREEMENT

This Retransmission Consent Agreement ("Agreement") is made as of March 1, 2017 (the "Effective Date"), by and between SUPER TOWERS, INC. and its wholly-owned subsidiary, WNAC, LLC (collectively Broadcaster"), which owns and operates the full power broadcast television station(s) set forth in Attachment A (the "Station(s)"), and CoxCom, LLC d/b/a Cox Communications ("Operator"), on behalf of itself and the Operator Entities that own, operate or manage the multichannel video distribution system(s) identified on Attachment A (the "System(s)").



**Redacted**

2.      <u>Term</u>.

   (a)   The term of this Agreement shall commence on the Effective Date and expire at 11:59 p.m. prevailing local time on February 29, 2020, unless terminated sooner in accordance with the terms hereof (the "<u>Term</u>").

**Redacted**

3.      <u>Consent to Carriage; Signal Delivery</u>.

   (a)   Broadcaster hereby grants to Operator the non-exclusive right (but not the obligation, except as otherwise provided in Section 4 below) to receive, retransmit and distribute each Station's Digital Signal (including any portion thereof and whether licensed under the current call letters or any successor call letters thereto), in an analog, SD or HD format, over each System that (i) serves Subscribers located within the applicable Station's Television Market, (ii) carries the Station as of the Effective Date, or (iii) is located in an area where such Station is deemed "significantly viewed" (as such term is defined in FCC Rules).  With respect to carriage of a Station under subsections (i) or (ii) of this paragraph, in the event Broadcaster's authority to grant retransmission consent outside of a Station's Television Market is withdrawn or prohibited by a Station's network, then Broadcaster shall provide Operator a written notice of such limitations, and Operator shall have ninety (90) days from receipt of such notice, subject to applicable rules and regulations, to discontinue carriage of the Programming Feed associated with such Network, provided that any such restrictions are imposed on Operator in a non-discriminatory manner.

**Redacted**

Redacted

Redacted



Redacted

Redacted

Redacted

Redacted

Redacted

Redacted

Redacted

Redacted

10.   <u>Copyright</u>.  Operator acknowledges that the retransmission of the Digital Signals of the Stations pursuant to this Agreement does not convey the copyrights of and to the underlying programming transmitted by the Stations.  Securing clearances to retransmit the copyrighted programming in the Digital Signals remains the obligation of Operator so long as such clearances can be obtained through the compulsory licensing regulations of Section 111 of the Copyright Act (17 U.S.C. Section 111, *et seq.*) ("<u>Section 111</u>") at costs substantially similar to such costs as of the Effective Date.  In the event that the cost to Operator of maintaining such compulsory license for the retransmission of the Digital Signals (including any part of the Digital Signal of any Station) on any System is materially increased, or if Operator will be required to secure copyright clearances for the right to receive or distribute all or any part of the Digital Signals other than the compulsory copyright license pursuant to Section 111, Operator may defer or suspend carriage of the applicable Station's Digital Signal (or portion thereof) attributable thereto until such time as Broadcaster either (i) indemnifies, defends and holds harmless Operator and the pertinent System(s) for any increase attributable to carriage of the applicable Station's Digital Signal (or portion thereof), together with a reasonable amount to cover Operator's time and effort spent securing

Redacted

such clearances, or (ii) provides to Operator direct copyright clearance, in a form reasonably satisfactory to Operator, for the Operator's retransmission of the applicable Station's Digital Signal (or affected portion thereof) and all copyrighted content therein.



Redacted

14.   <u>Indemnification</u>.

(a)   Broadcaster shall indemnify and hold harmless Operator, each Operator Entity, each System, and the officers, directors, employees, shareholders, members, representatives and other agents of each from and against any third-party claims, liability, causes of action, and costs (including reasonable attorneys' fees) ("<u>Losses</u>") arising from, or in connection with, (i) the breach by Broadcaster of any of its covenants, representations, warranties or agreements contained herein and/or (ii) any programming or

Redacted

other content provided by Broadcaster pursuant to or in connection with this Agreement, including, but not limited to, any suit or proceeding for libel, slander, defamation, invasion of property or privacy rights, or violation of trademark, patent, copyright or other intellectual property rights.

Redacted

(c)     Promptly after receipt by a party of notice of the commencement of any action, suit, proceeding or investigation in respect of which a claim for indemnification may be made hereunder by it or its affiliates, officers, directors, employees, shareholders, members, representatives or agents, such party will give written notice thereof to the other party; but the failure to so notify the other party will not relieve the other party from any liability or obligation which the other party may have to any indemnified person except to the extent of any material prejudice to the other party resulting from such failure.  If any such action, suit, proceeding or investigation is brought against an indemnified person, the indemnifying party will be entitled to participate therein and, if it wishes to assume the defense thereof with counsel satisfactory to the indemnified person (who shall not, except with the consent of the indemnified person, be counsel to the indemnified person) and provided it gives written notice to the indemnified person of its election so to assume the defense thereof, within fifteen (15) days of receiving notice of the claim.  Each indemnified person will be obliged to cooperate reasonably with the indemnifying party, at the expense of the indemnifying party, in connection with such defense and the compromise or settlement of any such action, suit, proceeding or investigation.

Redacted

Redacted

Redacted

# Redacted

18.   <u>Assignments; Divested Systems and Stations</u>.

(a)   This Agreement may not be assigned by Operator without the prior written consent of Broadcaster, which consent shall not be unreasonably withheld, conditioned or delayed; <u>provided</u>, that Operator may assign this Agreement without the consent of Broadcaster (but upon prior written notice to Broadcaster), with respect to one or more Systems, to (i) any Operator Entity or (ii) any entity acquiring all or substantially all of the assets of Operator or any of the applicable System(s), provided that such assignee accepts the terms and conditions created by this Agreement, regardless of whether such assignee has a retransmission consent agreement with Broadcaster.  In the event of any valid assignment of this Agreement by Operator, Operator shall be relieved of all obligations arising thereafter with respect to the applicable System(s) and Broadcaster shall look solely to the assignee for enforcement of such obligations.

(b)   This Agreement may not be assigned by Broadcaster without the prior written consent of Operator, which consent shall not be unreasonably withheld, conditioned or delayed; <u>provided</u>, that Broadcaster may assign this Agreement without the consent of Operator (but upon prior written notice to Operator) to (i) any Broadcaster Entity, or (ii) any entity acquiring all or substantially all of the assets of Broadcaster or any Station(s); <u>provided</u>, <u>further</u>, that any assignee assumes all of Broadcaster's obligations arising hereunder with respect to the applicable Station(s).  In the event of any valid assignment of this Agreement by Broadcaster, Broadcaster shall be relieved of all obligations arising thereafter and Operator shall look solely to the assignee for enforcement of such obligations.  Notwithstanding the foregoing, if Broadcaster sells, transfers, assigns or otherwise disposes of its ownership interest in one or more Stations to a third party (the "<u>Station Transferee</u>"), then at Operator's request, Broadcaster shall require such Station Transferee (i) to assume this Agreement with respect to such Station(s) and the applicable terms and conditions hereof and agree to abide by the terms hereof through the remainder of the Term, regardless of whether Operator has a retransmission consent agreement in effect with such Station Transferee for the carriage of other broadcast television signals (and regardless of any conflicting "after-

- 20 -



acquired station" language contained therein to the contrary, and (ii) to agree that the terms herein shall supersede any conflicting provision in any such other retransmission consent agreement, regardless of which agreement was signed later and regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements

Redacted

20.  Miscellaneous. Redacted

This Agreement constitutes the entire agreement and understanding between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous oral or written agreements and representations between the parties, including, without limitation, all other amendments, term sheets, and other agreements between Operator or an Operator Entity and Broadcaster or a Broadcaster Entity ("Prior Agreements"), and, except as set forth in Section 5(e) of this Agreement, such Prior Agreements shall be of no further force and effect, even if such Prior Agreement, by its terms, would have continued in force beyond the Effective Date. Redacted

Redacted

Redacted

This Agreement shall be construed in accordance with the laws of the State of Delaware. Redacted

Redacted

IN WITNESS WHEREOF, each of the parties has executed this Agreement as of the Effective Date.

SUPER TOWERS, INC.

By: _____

Name: _TIMOTHY C. PHELPS(?)_

Title: _President_    2/8/2017

COXCOM, LLC

By: _____

Name: _Andrew I. Albert_

Title: _SVP, Content Acquisition_

Redacted

Redacted