UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COXCOM, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>SUPER TOWERS, INC., ET AL.,<br><br>      Defendants. | Case No. 1:21-cv-11124-DJC |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S REQUEST FOR SPEEDY HEARING

Defendants Super Towers, Inc. ("Super Towers") and WNAC, LLC ("WNAC" and collectively "Defendants") submit this memorandum in opposition to Plaintiff CoxCom LLC, d/b/a Cox Communications ("Cox" or "Plaintiff")'s emergency motion for a speedy hearing on Cox's request for declaratory judgment.

## INTRODUCTION

Cox's insistence on a speedy hearing on its motion for declaratory judgment is inappropriate for a number of reasons. First, this is a case about damages. Nothing about the potential harm to Cox justifies this case taking precedence over the other matters pending before the Court. Second, contrary to Plaintiff's framing of the issue, there are, in fact, factual disputes at play that will require both discovery and experts. Finally, all necessary parties have not been joined in the case, and Plaintiff's requested relief, as currently framed, would not effectively settle the controversy. The Court should not grant Plaintiff's request for a speedy hearing and declaratory judgement until Mission Broadcasting ("Mission") is joined as a party.

**BACKGROUND**

The majority of Americans get access to television programming by subscribing to a multichannel video programming distributor ("MVPD"), like a cable operator, which provides subscribers with access to various channels, including local broadcast television stations licenses by the FCC. Compl. ¶ 11. Cox is an MVPD. Under federal law, MVPDs, like Cox, must obtain stations' consent to retransmit the stations' broadcasts, and so they enter into retransmission consent agreements with television stations to establish the terms and conditions of retransmission, and ensure compliance with federal communications and copyright laws. Compl. ¶¶ 11, 14.

Retransmission agreements often include an "after-acquired" station and assignment provision, which clarifies the terms of the agreement in the event that a broadcast owner buys or sells a TV station to another broadcast owner. *Id.* ¶ 15. The purpose of an after-acquired station provision is to ensure that parties are clear about which retransmission agreement governs the terms of one or more television channels. *Id*. ¶ 16.

In 2017, WNAC entered into the WNAC Retransmission Agreement with Cox that allowed Cox to retransmit WNAC-TV's broadcast signal to Cox's subscribers in the Providence and New Bedford area. Compl. ¶ 19. On February 11, 2020, Super Towers (WNAC's parent corporation), WNAC, and Cox amended and extended the WNAC Retransmission Agreement. *Id*. The amended WNAC Retransmission Agreement is set to expire on February 28, 2023. *Id*.

Under Section 9(a) of the WNAC Retransmission Agreement, Cox agreed to pay Super Towers and WNAC a monthly license fee per subscriber in exchange for the right to retransmit WNAC-TV's broadcast television signal. *Id*. ¶ 22. Under Section 18(b) of the WNAC Retransmission Agreement, if Super Towers and WNAC sell, transfer, assign, or otherwise dispose of the ownership interest in WNAC to a third party, then at Cox's request, Super Towers and WNAC shall require the third party to assume the WNAC Retransmission agreement. The section

also includes a provision that the terms of the WNAC Retransmission agreement supersede any conflicting provision in any other retransmission consent agreement. *Id*. ¶ 25.

Separately, Mission and Cox have had entered into a retransmission consent agreement going back years. This retransmission agreement governs the terms related to twenty television stations across the United States. Ex. 1. The latest version of the Mission Retransmission Agreement was signed on December 28, 2018, over a year ***after*** the first WNAC Retransmission Agreement was signed. The Mission Retransmission agreement is set to expire on December 31, 2021. *Id*. at 10.

Similarly, to the WNAC agreement, the Mission Retransmission Agreement contains provisions regarding assignment and an after-acquired station provision. Section 19(b) states that "[e]ach television station that after the date hereof is acquired by [Mission] … ('*Subsequently Acquired Station*') shall be included as a Station hereunder and shall be subject to the terms and conditions of this Agreement if Operator provides service via an Eligible System to any Subscribers in such Station's DMA." Section 19(c) of the Mission Retransmission Agreement provides further clarifies that:

> Except as otherwise provided below, for the avoidance of doubt, the provisions of this Section 19 shall control all retransmission of television stations acquired by Broadcaster or an entity directly or indirectly controlling, controlled by or under common control with Broadcaster after the date hereof on all Eligible Systems owned, built or acquired by Operator during the term notwithstanding any conflicting provisions contained in any agreements between Operator and any third party, and shall apply regardless of whether Broadcaster assumes or accepts assignment of any such agreements.

In November 2020, Super Towers and WNAC informed Cox that Super Towers intended to assign the FCC broadcast license and sell the ownership interest in WNAC to Mission. Compl. ¶ 30. On December 18, 2020, Super Towers and WNAC notified Cox that they had been informed that WNAC would qualify as an "after-acquired" station under the terms of the Mission

Retransmission Agreement and, accordingly, that the rates in the Mission Retransmission Agreement would control the retransmission of WNAC. *Id*. ¶ 34; Ex. 2, December 18, 2020 Letter from Chris Sullivan. Super Towers advised Cox to address the matter with Mission. *Id*.

On December 29, 2020, Cox notified Super Towers, WNAC, and Mission that it believed Super Towers and WNAC would be in breach of the WNAC Retransmission contract if Mission did not adopt the terms and rates of the WNAC Retransmission Agreement rather than the terms and rate of the Mission Retransmission Agreement. *Id*. ¶ 35.

On January 18, 2021, Mission notified Cox that the Mission Retransmission Agreement with Cox controls, and that WNAC would qualify as an "after-acquired" station under the terms of that agreement. Ex. 3, January 18, 2021 Letter from M. Solum. **Cox did not respond or dispute that position.**

On June 16, 2021, the sale of WNAC to Mission closed. *Id*. ¶ 38. Mission Broadcasting promptly notified Cox about the sale, and informed Cox that pursuant to the terms of the Mission Retransmission Agreement and consistent with its January 18, 2021 letter, the retransmission of WNAC would be governed by the Mission Retransmission Agreement as of June 16, 2021. *Id*. ¶ 39. **Cox did not respond or dispute that position.**

Seven months after Cox learned that the Mission Retransmission Agreement would control the rates for the retransmission of WNAC, on July 7, 2021, Cox filed this action against Super Towers and WNAC seeking, *inter alia*, a declaration that the terms of the WNAC Retransmission Agreement control until the agreement expires in February 2023. Tellingly, Cox chose not to name Mission as a defendant, and failed to mention that the actual legal question at issue is not whether Defendants were required to assign the WNAC Agreement, but rather, which retransmission agreement controls the retransmission of WNAC. One and a half months later, (on

August 2, 2021), Cox filed an emergency request for a speedy hearing and declaratory judgment asking for a hearing on August 16, 2021.

In the meantime, Cox failed to dispute or even respond to either Mission's January 18, 2021 letter or its June 18, 2021 letter, both of which confirm that the Mission Retransmission Agreement controls the retransmission of WNAC for Cox.

## LEGAL STANDARD.

Courts have the discretion to determine whether a party's request for declaratory judgment should be handled in an expedited fashion. *Cty. of Butler v. Wolf*, No. 2:20-cv-677, 2020 WL 2769105, *3 (W.D. Pa. May 28, 2020). "Expedited proceedings on a motion for declaratory judgment are appropriate where the determination is largely one of law, and factual issues…are not predominant." *Id*. Federal Rule of Civil Procedure 57 explicitly states that "[t]he court may order a speedy hearing of a declaratory-judgment action." However, in order for a court to grant a motion for a speedy hearing under Rule 57, "all parties having an interest therein or adversely affected must be made parties or be cited." Fed. R. Civ. P. 57, advisory committee notes. Additionally, "[w]hen declaratory relief will not be effective in settling the controversy, the court may decline to grant it." *Id*. The Declaratory Judgment Act also gives district courts "a unique breadth of ... discretion to decline to enter a declaratory judgment." *Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC,* No. 16-CV-10150-ADB, 2016 WL 1384777, at *8 (D. Mass. Apr. 7, 2016), *aff'd,* 861 F.3d 287 (1st Cir. 2017) (quoting *Biogen, Inc. v. Schering AG,* 954 F. Supp. 391, 397 (D. Mass. 1996)).

## ARGUMENT

**I.  PLAINTIFF'S REQUESTED RELIEF DOES NOT JUSTIFY A SPEEDY HEARING.**

Nothing about Cox's claim and requested relief supports holding an *emergency* hearing and allowing this case to take precedence over the numerous other matters pending on the Court's docket.  This case is about money.  As Plaintiff's own papers acknowledge, Plaintiff's concern is about the consequences that could result in Cox having to "pay higher license fees for WNAC-TV's broadcast signal under the station's new ownership." *See*, Dkt. 18-1 Plaintiff CoxCom LLC's Memorandum in Support of Its Emergency Motion for Speedy Hearing at 1.  Plaintiff also notes that it will also be exposed to legal claims if it continues to operate under the terms of the WNAC Retransmission Agreement.  *Id*.  As a practical matter, and contrary to Plaintiff's belief, Plaintiff is not at risk of facing both of these outcomes– Plaintiff will either pay the higher rate as is required under the controlling contract, or face a potential legal claim for continuing to operate under the terms of the legacy retransmission agreement.  In either event, neither one of these outcomes justifies a speedy hearing and emergency declaratory relief.  If Plaintiff chooses to pay the right rate, then it can still pursue an action claiming that it overpaid.  If Plaintiff pays an amount below the contractually require rate, then the Plaintiff would be subject to legal claims, but that is not a reason to expedite a hearing on an emergency basis.  There is no immediate risk of harm that cannot be remedied.  Simply put, there are no exigencies or other circumstances that warrant a speedy hearing in this litigation.

**II.  FACTUAL DISPUTES EXIST RENDING A SPEEDY HEARING AND EMERGENCY DECLARATORY JUDGMENT INAPPROPRIATE.**

Contrary to Plaintiff's narrative, there are factual issues that render granting a speedy hearing and emergency declaratory relief in this case inappropriate.  As described above, Plaintiff misconstrues the main issue at the heart of this case–there are two contracts at play, and one of

them, the Mission Retransmission Agreement, controls over the other. Plaintiff seeks a speedy hearing to declare that the "terms of the WNAC Retransmission Agreement remain in full force and effect until 11:59 p.m. Eastern Standard Time on February 23, 2023, or until further order of this Court[.]" *See* Dkt. 17, Plaintiff CoxCom LLC's Emergency Motion for Declaratory Judgment. This requested declaration is framed to favor Cox's view of the facts, and completely omits any mention of the Mission Retransmission Agreement or its terms. The Court will need to engage in contractual analysis to understand the terms of both agreements, and the dispute could involve discovery related to historical agreements, course of conduct, and the parties' respective negotiations. This kind of complex factual inquiry is not appropriate for a speedy hearing. See *Cty. of Butler v. Wolf*, No. 2:20-cv-677, 2020 WL 2769105, *3 (W.D. Pa. May 28, 2020) (stating that "[e]xpedited proceedings on a motion for declaratory judgment are appropriate where the determination is largely one of law, and factual issues…are not predominant.)

### III.    EMERGENCY RELIEF CANNOT BE GRANTED UNTIL MISSION IS JOINED.

Plaintiff's motion for a speedy hearing and declaratory judgment should be denied because Cox has failed to include Mission as a party to the suit. Cox is well aware that Mission believes that the terms of the Mission Retransmission Agreement control. Ex. 3. By filing this suit without Mission, Cox is attempting to short-circuit Mission's right to explain why the Mission Retransmission Agreement controls. In the event the Court granted Cox's requested relief and issued an order declaring that the terms of the WNAC Retransmission Agreement control, Mission would be bound by a court order depriving it of the bargained-for benefits of the Mission Retransmission Agreement.

A court cannot grant a motion for a speedy hearing under Rule 57 until "all parties having an interest therein or adversely affected must be made parties or be cited." Fed. R. Civ. P. 57, advisory committee notes. Because Mission is not a party, and faces real adverse consequences if

the Court were to move forward with the speedy hearing and Plaintiff's requesting declaratory judgement, Plaintiff's motion must be denied.[1]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a speedy hearing should be denied.

---

[1] Plaintiff's motion and request for a speedy hearing is also premature as Defendants have not even filed responsive pleadings yet in this case. On July 29, 2021, Defendants filed a motion to extend the time to file an answer or otherwise respond to the complaint. *See*, Dkt. 15 Defendants' Motion to Extend the Time to File an Answer or Otherwise Respond to the Complaint. In that motion, Defendants respectfully requested a thirty 30-day extension, which if granted, would make Defendant's deadline to answer or otherwise respond to the Complaint August 30, 2021. That motion is still pending before the Court. Plaintiff's requested timeline for a speedy hearing would mean that the hearing would take place before Defendants even filed an answer or responsive pleading. This timeline is nonsensical.

Respectfully submitted,

Super Towers, Inc. and WNAC, LLC

By their attorneys,

/s/ *Andrew R. Dennington*
Andrew R. Dennington, BBO #666892
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
One Federal Street, 15th Floor
Boston, MA 02110
Tel: (617) 482-8200
Email: adennington@connkavanaugh.com

Matthew Solum
(*pro hac vice admission pending*)
Brittney Nagle
(*pro hac vice admission pending*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4688
Email: msolum@kirkland.com

CERTIFICATE OF SERVICE

I, Andrew R. Dennington, hereby certify that this document filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 16, 2021.

/s/ *Andrew R. Dennington*
Andrew R. Dennington, BBO #666892

2886736.1 05831.000