UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COXCOM, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>SUPER TOWERS, INC., ET AL.,<br><br>                    Defendants. | Case No. 1:21-cv-11124-DJC |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS SUPER TOWERS, INC. AND WNAC, LLC'S MOTION TO DISMISS VERIFIED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 3

        A.       The WNAC Retransmission Agreement ................................................................ 3

        B.       The Mission Broadcasting Retransmission Agreement ......................................... 4

        C.       Mission Broadcasting Acquires WNAC ............................................................... 5

        D.       Cox Ignores the Plain Terms of the Mission Retransmission Agreement and Files Suit ........................................................................................................ 5

APPLICABLE STANDARD ....................................................................................................... 5

ARGUMENT ................................................................................................................................ 7

I.       Mission is a Necessary Party under Rule 19(a) ................................................................ 7

II.      Mission Broadcasting Cannot be Joined ........................................................................... 9

III.     Under Rule 19(b), the Court Should Dismiss the Complaint Instead of Allowing it to Proceed in Mission Broadcasting's Absence. ............................................................... 9

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acton Co. v. Bachman Foods, Inc.*,
  668 F. 2d 76 (1st Cir. 1982) .......................................................................................................8

*Cabrera–Morales v. UBS Trust Co.*,
  769 F. Supp. 2d 67 (D.P.R.2011) ................................................................................................5

*Downing v. Globe Direct LLC*,
  806 F. Supp. 2d 461 (1st Cir. 2011) ..........................................................................................10

*Phoenix Ins. Co. v. Delangis*,
  2015 WL 1137819 (D. Mass. Mar. 13, 2015) ............................................................... 6, 7, 9, 10

*Phx. Ins. Co. v. Delangis*,
  2015 WL 11378191 (D. Mass. Mar. 13, 2015) ...........................................................................6

*Picciotto v. Contl. Cas. Co.*,
  512 F.3d 9 (1st Cir 2008) ................................................................................................ 6, 7, 9, 10

*Pujol v. Shearson American Express, Inc.*,
  877 F.2d 132 (1st Cir. 1989) .......................................................................................................8

*Raytheon Co. v. Continental Cas. Co.*,
  123 F. Supp. 2d 22 (D. Mass. 2000) ...........................................................................................5

*RXI Pharmaceuticals Corp. v. Khvorova*,
  2019 WL 8223846 (D. Mass. Feb. 8, 2019) ...............................................................................6

*Tell v. Trustees of Dartmouth College*,
  145 F.3d 417 (1st Cir. 1998) ................................................................................................. 8, 10

*Travelers Indem. Co. v. Dingwell*,
  884 F.2d 629 (1st Cir. 1989) .....................................................................................................10

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ....................................................................................................................8

*Z & B Enterprises, Inc. v. Tastee–Freez Int'l, Inc.*,
  162 Fed. Appx. 16 (1st Cir. 2006) ..............................................................................................6

**Statutes**

28 U.S.C. § 1332(a) .........................................................................................................................9

28 U.S.C. § 1332(c) .........................................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(7) .......................................................................................................... 4, 5, 6

Fed. R. Civ. P. 19 .................................................................................................................. 2, 5, 6, 8

Fed. R. Civ. P. 19(a) ............................................................................................................... 6, 7, 10

Fed. R. Civ. P. 19(a)(1) ................................................................................................................... 6

Fed. R. Civ. P. 19(b) ............................................................................................................ 6, 7, 9, 10

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359
    (3d ed. 2004) ............................................................................................................................ 4

Defendants Super Towers, Inc. ("Super Towers") and WNAC, LLC ("WNAC, LLC," and collectively, "Defendants") respectfully submit this Opening Brief in support of their Motion to Dismiss the Verified Complaint (the "Complaint") filed by Plaintiff COXCOM, LLC, d/b/a Cox Communications ("Cox" or "Plaintiff").

## PRELIMINARY STATEMENT

This lawsuit is baseless. Defendants own and operate television station WNAC ("WNAC"), licensed by the Federal Communications Commission ("FCC") to Providence, Rhode Island. Cox is a cable television provider that obtains the rights to retransmit the signal of a TV station to Cox's customers through retransmission agreements with the owners of such TV stations. On March 1, 2017, Cox entered a retransmission consent agreement with Super Towers and WNAC, LLC (the "WNAC Retransmission Agreement") that governed the terms of Cox's ability to retransmit WNAC's broadcast signal to its subscribers. More than a year and a half later, on December 28, 2018, Cox entered into a retransmission consent agreement with Mission Broadcasting, Inc. ("Mission Broadcasting") (the "Mission Retransmission Agreement") that governs the terms of Cox's ability to retransmit Mission Broadcasting's stations' broadcast signals to Cox subscribers. And thereafter, on June 16, 2021, Mission Broadcasting acquired the assets of television station WNAC from WNAC, LLC.

After the acquisition, Cox has continued to retransmit WNAC to Cox's subscribers, but has sought to evade its contractual obligations with Mission Broadcasting. To that end, Cox initiated this action claiming the WNAC Retransmission Agreement controls the price it should pay for its rights to retransmit WNAC to its subscribers. Problematically for Cox, the Mission Retransmission Agreement expressly addresses this issue and provides that "[e]ach television station that after the date hereof is acquired by [Mission] … ('*Subsequently Acquired Station*') shall be included as a Station hereunder and shall be subject to the terms and conditions of this

Agreement if Operator provides service via an Eligible System to any Subscribers in such Station's DMA." If that was not clear enough, the Mission Retransmission Agreement further provides that "[e]xcept as otherwise provided below, for the avoidance of doubt, the provisions of this Section 19 shall control all retransmission of television stations acquired by Broadcaster or an entity directly or indirectly controlling, controlled by or under common control with Broadcaster after the date hereof on all Eligible Systems owned, built or acquired by Operator during the term notwithstanding any conflicting provisions contained in any agreements between Operator and any third party, and shall apply regardless of whether Broadcaster assumes or accepts assignment of any such agreements."

These provisions are dispositive. WNAC is clearly a "Subsequently-Acquired Station" under the Mission Retransmission Agreement as it was acquired by Mission after the date of the Mission Retransmission Agreement. And, pursuant to that agreement, even if the acquiree (here, WNAC) had its own retransmission agreement with Cox (like it did here), and Mission Broadcasting assumes (again, like it did here), that the terms of the Mission Retransmission Agreement control that after-acquired station's broadcast. After the acquisition closed, under no circumstances could the WNAC Retransmission Agreement possibly control the price that Cox pays for its ability to retransmit WNAC.

But even setting these deficiencies aside, the complaint must be dismissed for an entirely separate reason: Cox failed to join Mission Broadcasting as a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure (presumably to attempt to hide the existence of the Mission Retransmission Agreement). However, joining Mission Broadcasting as is required would deprive this Court of jurisdiction as there would no longer be diversity. Therefore, this action must be dismissed.

**BACKGROUND**

The majority of Americans receive access to television programming by subscribing to a multichannel video programming distributor ("MVPD"), like a cable operator, which provides subscribers with access to various channels, including local broadcast television stations licensed by the FCC. Compl. ¶ 11. Cox is an MVPD. Under federal law, MVPDs, like Cox, must obtain stations' consent to retransmit the stations' broadcasts. Accordingly, they enter into retransmission consent agreements with television stations to establish the terms and conditions of retransmission, and ensure compliance with federal communications and copyright laws. Compl. ¶¶ 11, 14.

Retransmission agreements frequently include an "after-acquired" station and assignment provision, which provides the terms of the agreement in the event that a broadcast owner buys or sells a TV station to another broadcast owner. Id. ¶ 15. The purpose of an after-acquired station provision is to expressly provide which retransmission agreement governs the terms of the relevant parties' relationships in the event of an acquisition of one or more television stations. Id. ¶ 16.

A.  **The WNAC Retransmission Agreement**

On March 1, 2017, WNAC, LLC entered into the WNAC Retransmission Agreement with Cox that permitted Cox to retransmit WNAC-TV's broadcast signal to Cox's subscribers in the Providence and New Bedford area. Compl. ¶ 19. The WNAC Retransmission Agreement was subsequently amended and extended on February 11, 2020, and is set to expire on February 28, 2023. Id. Under Section 9(a) of the WNAC Retransmission Agreement, Cox agreed to pay Super Towers and WNAC a monthly license fee per subscriber in exchange for the right to retransmit WNAC-TV's broadcast television signal. Id. ¶ 22.

Under Section 18(b) of the WNAC Retransmission Agreement, if Super Towers and WNAC sell, transfer, assign, or otherwise dispose of their ownership interest in WNAC to a third party, then at Cox's request, Super Towers and WNAC shall require the third party to assume the

3

WNAC Retransmission Agreement. This section also includes a provision that the terms of the WNAC Retransmission Agreement supersede any conflicting provision in any other retransmission consent agreement. *Id.* ¶ 25.

### B. The Mission Broadcasting Retransmission Agreement

Prior to this dispute, Mission Broadcasting and Cox had a long-standing relationship pursuant to which the parties entered into multiple retransmission agreements. The latest version of the Mission Retransmission Agreement was signed on December 28, 2018—over a year ***after*** the first WNAC Retransmission Agreement was signed—and is set to expire on December 31, 2021. See Dkt. No. 37.[1] This agreement governs the terms related to Mission's twenty plus television stations across the United States. *Id.*

Importantly, the Mission Retransmission Agreement contains provisions regarding assignment and an after-acquired station provision. Section 19(b) states that "[e]ach television station that after the date hereof is acquired by [Mission] … ('*Subsequently Acquired Station*') shall be included as a Station hereunder and shall be subject to the terms and conditions of this Agreement if Operator provides service via an Eligible System to any Subscribers in such Station's DMA." *Id.* Section 19(c) of the Mission Retransmission Agreement further clarifies that:

> Except as otherwise provided below, for the avoidance of doubt, the provisions of this Section 19 shall control all retransmission of television stations acquired by Broadcaster or an entity directly or indirectly controlling, controlled by or under common control with Broadcaster after the date hereof on all Eligible Systems owned, built or acquired by Operator during the term notwithstanding any conflicting provisions contained in any agreements between Operator and any third party, and shall apply regardless of whether Broadcaster assumes or accepts assignment of any such agreements.

---

[1] "In deciding a motion to dismiss under Rule 12(b)(7), a court is 'not limited to the pleadings' and may consider 'other relevant extra-pleading evidence.'" *Axis Ins. Co.,* 287 F.R.D. at 113 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359, at 68 (3d ed. 2004) (additional citation omitted)).

4

*Id*. Collectively, these provision make clear that if Mission acquires a television station after the date of the Mission Retransmission Agreement, the Mission Retransmission Agreement governs the parties' rights and obligations with respect to the after-acquired station ***even if*** Cox had an existing retransmission agreement regarding the acquired station.

      **C.**    **Mission Broadcasting Acquires WNAC**

On June 16, 2021, Super Towers and WNAC sold the WNAC, LLC assets to Mission Broadcasting, and, as a part of that transaction, assigned the WNAC Retransmission Agreement, to Mission Broadcasting. Compl. ¶ 30. Shortly thereafter, Mission Broadcasting notified Cox that under the terms of the Mission Retransmission Agreement, the retransmission of the WNAC programming would be governed by the Mission Retransmission Agreement as of June 16, 2021. *Id*. ¶ 39. Cox continued to retransmit WNAC, but, notwithstanding the plain language of the Mission Retransmission Agreement, sought to avoid its contractual obligations with Mission Broadcasting because the cost of retransmitting WNAC under the Mission Retransmission Agreement was higher than under the WNAC Retransmission Agreement.

      **D.**    **Cox Ignores the Plain Terms of the Mission Retransmission Agreement and Files Suit**

On July 7, 2021, Cox filed the Complaint against Super Towers and WNAC, LLC, improperly claiming that WNAC and Super Towers failed to cause Mission to assume the WNAC Retransmission Agreement. Remarkably, Cox failed to name Mission Broadcasting in its suit and failed to mention the Mission Retransmission Agreement at all.

## **APPLICABLE STANDARD**

Under Fed. R. Civ. P. Rule 12(b)(7), a complaint may be dismissed when a plaintiff fails to join a required party under Rule 19 of the Federal Rules of Civil Procedure. *See generally Cabrera–Morales v. UBS Trust Co.,* 769 F. Supp. 2d 67, 70 (D.P.R.2011); *Raytheon Co. v.*

*Continental Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000) ("Dismissal under Rule 12(b)(7) is governed by Rule 19 of the Federal Rules of Civil Procedure."). In undertaking this analysis, courts consider a three-pronged test. **First**, the court must determine if the absent party is a "required party" under Rule 19(a). **Second**, the court determines whether joinder of the required party is "feasible." And **third**, if joinder is not feasible, under Rule 19(b), the court must conduct an equitable balancing test to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *RXI Pharmaceuticals Corp. v. Khvorova*, 2019 WL 8223846 at *3 (D. Mass. Feb. 8, 2019) (quoting *Phx. Ins. Co. v. Delangis*, 2015 WL 11378191 at *6 (D. Mass. Mar. 13, 2015)).

> Under Rule 19(a), a party is considered to be "necessary" or required if:
>
> (A) in that person's absence, the court cannot afford complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*See* FRCP 19(a)(1). A party need only "meet one of the three criteria in Rule 19(a) to show necessity." *Picciotto v. Contl. Cas. Co.*, 512 F.3d 9, 16, n. 11 (1st Cir 2008); *Z & B Enterprises, Inc. v. Tastee–Freez Int'l, Inc.*, 162 Fed. Appx. 16, 20 (1st Cir. 2006).

If a party is necessary, the court must determine if joinder is feasible. *See Picciotto v. Contl. Cas. Co.*, 512 F.3d 9, 15 (1st Cir. 2008); *Phoenix Ins. Co. v. Delangis*, 2015 WL 1137819, at *3 (D. Mass. Mar. 13, 2015). If joinder is not feasible, courts engage in a balancing test to determine whether the action can proceed among the existing parties or be dismissed. *See*

*Picciotto*, 512 F.3d at 15; *Phoenix Ins.*, 2015 WL 1137819, at *3. Rule 19(b) enumerates factors the court should consider in determining whether an action can proceed in the absence of a necessary party:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FRCP 19(b). Here, Mission Broadcasting is a necessary party that cannot be joined without destroying diversity and the factors enumerated in FRCP 19(b) weigh in favor of dismissal.

## ARGUMENT

### I. MISSION IS A NECESSARY PARTY UNDER RULE 19(A)

Mission Broadcasting is a necessary party. But by failing to name Mission Broadcasting as a party to this lawsuit, Cox is seeking to evade its responsibilities under the Mission Retransmission Agreement and deprive Mission Broadcasting of the ability to enforce the bargained-for terms of its agreement with Cox. At core, this dispute is about which agreement, the Mission Retransmission Agreement or the WNAC Retransmission Agreement, controls the retransmission of WNAC programming to Cox's subscribers. Cox knows the Mission Retransmission Agreement controls. Nonetheless, by failing to name Mission Broadcasting as a defendant in this action and not even mentioning the Mission Retransmission Agreement in its

7

complaint, Cox sought to hide the Mission Retransmission Agreement from the Court and deprive Mission Broadcasting of its right to enforce the Mission Retransmission Agreement.

Under the Federal Rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966). The purpose of Rule 19 is to thus ensure that "[w]henever feasible, the persons materially interested in the subject of an action should be joined as parties so that they may be heard and a complete disposition made." Fed. R. Civ. P. 19 advisory committee's note to 1966 Amendment; *see also Pujol v. Shearson American Express, Inc.*, 877 F.2d 132 (1st Cir. 1989) ("These rules seek to involve as many apparently concerned persons as is compatible with efficiency and due process.") (internal quotation marks and citation omitted).

Here, the ability of Mission Broadcasting to protect its interests will be plainly impaired if it is not joined as a party to this action.  Mission Broadcasting would face a real risk of being bound by a Court order without even being heard if the Court were to grant Cox's requested relief.  And even if Mission Broadcasting was not formally bound by the outcome, "an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken [its] bargaining position for settlement purposes." *Acton Co. v. Bachman Foods, Inc*., 668 F. 2d 76, 78 (1st Cir. 1982).  Nor could Super Towers or WNAC, LLC adequately represent the interests of Mission Broadcasting because neither are parties to the Mission Retransmission Agreement and therefore have no authority to enforce that agreement. *See Tell v. Trustees of Dartmouth College,* 145 F.3d 417, 419 (1st Cir. 1998) (affirming dismissal under Rule 19 and observing that "without *a perfect identity* of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party ... [A]n obvious potential exists for conflict.") (emphasis added).   Mission

8

Broadcasting is a necessary party because, in order to resolve this case must, the Court must interpret a contract to which Mission Broadcasting is a party and its interests could be impaired as a result. *See Picciotto*, 512 F.3d at 17; *Phoenix Ins.*, 2015 WL 1137819, at *5.

## II.   MISSION BROADCASTING CANNOT BE JOINED

Mission Broadcasting cannot be joined to this action because joinder would destroy diversity. *Picciotto*, 512 F.3d at 17. In order for this Court to have diversity jurisdiction, the amount in controversy must exceed $75,000, and no plaintiff may share a state of citizenship with any defendant. 28 U.S.C. § 1332(a). A corporation is considered a citizen of both its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c). As detailed in the complaint, Cox is incorporated in Delaware, with its principal place of business in Georgia. Compl. ¶ 2. Mission is also incorporated in Delaware, with its principal place of business in Texas. Because both Cox and Mission are incorporated in Delaware, Mission cannot be joined without destroying the Court's jurisdiction under 28 U.S.C. § 1332(a).

## III.   UNDER RULE 19(B), THE COURT SHOULD DISMISS THE COMPLAINT INSTEAD OF ALLOWING IT TO PROCEED IN MISSION BROADCASTING'S ABSENCE.

Not only is Mission Broadcasting necessary, but it is also "indispensable," so the court must determine whether this action can proceed in Mission's absence. Rule 19(b) enumerates the factors to be considered: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. FRCP 19(b).

The first two factors of the Rule 19(b) analysis overlap with the "necessity" analysis of Rule 19(a). *See Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 468 (1st Cir. 2011) (stating that the factor "largely duplicates the consideration that made a party necessary under Rule 19(a): a protectable interest that will be impaired or impeded by the party's absence"). As explained above, a judgment in the absence of Mission Broadcasting could substantially prejudice it, and neither Super Towers nor WNAC, LLC can adequately represent Mission Broadcasting's interest. *See Tell*, 145 F.3d at 419 ("[W]ithout a perfect identify of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party."); *Phoenix Ins.*, 2015 WL 1137819, at *6 (dismissing action for failure to join necessary party where proceeding in the party's absence "is plainly disadvantageous and prejudicial"); *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629 (1st Cir. 1989) (affirming the district court's finding that "a judgment rendered in the absence of the [party] would be 'extremely prejudicial'").

Defendants are also unaware of any "protective provisions" that the Court could adopt in the judgment to lessen or avoid prejudice to Mission Broadcasting. Any decision in this case will necessarily entail a determination of rights in which Mission Broadcasting has an interest and thus any judgment entered in the absence of Mission Broadcasting will be inadequate. *Picciotto*, 512 F.3d at 18 (dismissing action for failure to join indispensable party where it would be "difficult if not impossible to shape relief that would not implicate" indispensable party's interests); *see also Phoenix Ins.*, 2015 WL 1137819, at *7. And of course, Cox does have an adequate remedy—it can re-file its complaint in state court (notwithstanding that its allegations are hopelessly flawed). *Picciotto*, 512 F.3d at 18 (ability to file in state court is an adequate remedy); *Phoenix Ins.*, 2015 WL 1137819, at *7.

## **CONCLUSION**

For the foregoing reasons, Mission Broadcasting is a non-diverse, necessary and indispensable party to this action and because it cannot be joined, this action should be dismissed.

Respectfully submitted,

Super Towers, Inc. and WNAC, LLC

By their attorneys,

/s/ *Andrew R. Dennington*
Andrew R. Dennington, BBO #666892
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
One Federal Street, 15th Floor
Boston, MA 02110
Tel: (617) 482-8200
Email: adennington@connkavanaugh.com

Matthew Solum*
Brittney Nagle*
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4688
Email: msolum@kirkland.com
*admitted pro hac vice

Dated: August 30, 2021

## Local Rule 7.1(a)(2) Certification

On August 30, 2021, counsel for Defendants conferred with counsel for Plaintiffs about this motion and counsel for Plaintiffs indicated that Plaintiffs would not assent to this motion.

/s/ *Andrew R. Dennington*

## CERTIFICATE OF SERVICE

I, Andrew R. Dennington, hereby certify that this document filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 30, 2021.

/s/ *Andrew R. Dennington*
Andrew R. Dennington, BBO #666892

2899725.1 05831.000