**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| COXCOM, LLC, d/b/a COX COMMUNICATIONS,<br><br>        Plaintiff,<br><br>    v.<br><br>SUPER TOWERS, INC. and WNAC, LLC,<br><br>        Defendants. | Case No. 1:21-cv-11124-DJC |

**PLAINTIFF COXCOM LLC'S REPLY IN SUPPORT OF ITS
EMERGENCY MOTION FOR DECLARATORY JUDGMENT**

Plaintiff CoxCom LLC, d/b/a Cox Communications, ("Cox") submits this reply in support of its emergency motion for declaratory judgment (D. 17) in response to Defendants Super Towers, Inc. ("Super Towers") and WNAC, LLC's ("WNAC") opposition (D. 38) under Local Rule 56.1.

**INTRODUCTION**

Declaratory judgment should be allowed because Defendants do not dispute the plain text or argue any ambiguity in their obligations under *their* retransmission consent agreement with Cox ("WNAC Agreement"). It is undisputed that they transferred ownership interest in the WNAC television station but failed to assign the WNAC Agreement to the station's buyer, as their assignment agreement with Cox plainly requires, they repeatedly represented they would, and they concede they were obligated to do. D. 38 at 2. It is also undisputed that their WNAC Agreement remains in effect with Cox until February 28, 2023, and has not been terminated by any party. Thus, the Court should enter the declaratory judgment that Cox requests on the undisputed record. D. 17 at 1–2.

Rather than contest the declaratory relief Cox seeks, Defendants argue the motion is not ripe. But Defendants neither dispute the material facts nor show, by affidavit or declaration, after

multiple delays, that they need discovery to present facts that would justify their opposition. Nothing about their failure to assign the WNAC Agreement under its plain and undisputed terms requires discovery. That text should be the beginning and end of the dispute—without more delays and hardship to Cox. Moreover, contrary to Defendants' hardship argument (D. 38 at 1, 10–11), Cox now faces a breach or "go dark" threat by Mission and Defendants' counsel from this lawsuit if declaratory judgment does not issue by September 17, 2021 (D. 34-1), as well millions in monetary damages and claims for breach of contract, copyright infringement, and FCC regulatory enforcement, which Defendants must indemnify (D. 20 at 2, 9).

Defendants' concern about a "separate" agreement and legal issue between Mission and Cox—the entire thrust of Defendants' opposition—is immaterial for Cox's motion. D. 38 at 1. Mission is not a party to the WNAC Agreement. Nor is Mission's presence required for this action because the Court can accord complete relief among the existing parties and Cox's declaratory request does not implicate other interests. D. 17 at 1–2. As Defendants concede, the separate Mission Agreement "is outside the scope" of their obligations under the WNAC Agreement. D. 42-1 at 1. Defendants "own and operate television station WNAC-TV, which is licensed by the FCC." D. 38 at 2. Their WNAC Agreement allows Cox "to retransmit WNAC's broadcast signal to its cable television subscribers in the Providence and New Bedford area" and to "ensure compliance with federal communications and copyright laws." D. 38 at 2. And ultimately, their WNAC Agreement defines the rights and legal relations between Defendants and Cox in plain, unambiguous, and undisputed language until February 28, 2023. D. 38 at 2; D. 23-1; D. 23-2.

Cox's motion for declaratory judgment should be granted.

## ARGUMENT

I.    **Declaratory Judgment Should Be Entered Because There Is No Genuine Dispute on the WNAC Agreement, and Cox Is Entitled to Judgment under the Agreement.**

Cox's motion shows why the plain terms of the WNAC Agreement entitle Cox to declaratory judgment. D. 20 at 10–13. Defendants' response does not dispute the WNAC Agreement, argue any ambiguity in their agreement, or offer any way for the Court to read their agreement that supports a view that assignment and assumption were not required. D. 38 at 1–12. Instead, Defendants concede that the WNAC Agreement obligated them to assign to the Station Transferee and require the Station Transferee to assume the WNAC Agreement when they transferred ownership interest. D. 38 at 2.

Accordingly, because this contract dispute turns on questions of law that the Court should resolve and the Court should accord the parties' undisputed language its ordinary meaning, declaratory judgment is proper. D. 20 at 10–13 (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) (affirming declaratory judgment "arising from the contracts"); *Exelon Gen. Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del. 2017) ("The proper construction of any contract … is purely a question of law"); *ThoughtWorks, Inc. v. SV Inv. Partners, LLC*, 902 A.2d 745, 752 (Del. Ch 2006) ("It is well settled that if the terms of a contract are clear, the court must accord the language its ordinary meaning.")).

A.    **The WNAC Agreement Is Undisputed and Unambiguous.**

The WNAC Agreement makes clear that Defendants, at Cox's request, had to require the Station Transferee to assume the WNAC Agreement, to agree to abide by its terms through the rest of the term, and to agree the terms supersede any conflicting provision in any other retransmission consent agreement regardless of any other conflicting provision:

> if Broadcaster [Super Towers and WNAC] sells, transfers, assigns or otherwise
> disposes of its ownership interest in one or more Stations to a third party (the

3

"Station Transferee"), then **at Operator's [Cox's] request, Broadcaster [Super Towers and WNAC] shall require such Station Transferee (i) to assume this Agreement with respect to such Station(s) and the applicable terms and conditions hereof and agree to abide by the terms hereof through the remainder of the Term, regardless of whether Operator [Cox] has a retransmission consent agreement** in effect with such Station Transferee for the carriage of other broadcast television signals (and regardless of any conflicting "after-acquired station" language contained therein to the contrary, and **(ii) to agree that the terms herein shall supersede any conflicting provision in any such other retransmission consent agreement, regardless of which agreement was signed later and regardless of any conflicting provision in such other agreement that purports to supersede conflicting provisions in other agreements[.]**

D. 20 at 6; D. 23-1 § 18(b); D. 38 at 2–3 (emphasis added).

Defendants do not contest those terms or argue they are ambiguous. D. 20 at 1, 6–8. Indeed, Defendants concede under the plain meaning that they were obligated to assign to Mission, and require Mission to assume, the WNAC Agreement. D. 38 at 2. They also do not dispute that they failed to assign under those terms. D. 20 at 6–8. Nor do they produce a valid assignment and assumption for the Court. D. 42-1 at 1. If they had complied with their obligations, they would provide the assignment and assumption for the Court, and there would be no need to reference any alleged "dispute" with any other agreements. D. 38 at 1, 8. They did not (D. 20 at 6–8; D. 38 at 1, 4–5) and will not (D. 42-1 at 1, D. 42-2 at 2). Thus, this Court should enter declaratory judgment under the parties' undisputed language without extrinsic evidence.

    **B.    The Extrinsic Evidence and Mission Agreement Are Undisputed and Immaterial in Any Event.**

Cox's motion also shows why the separate Mission Agreement is immaterial for the declaratory judgment that Cox seeks. D. 20 at 13–16; D. 17 at 1–2. When, as here, "a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." *Exelon*, 176 A.3d at 1267. In response, Defendants offer no argument that the Mission Agreement somehow absolves them of their own

separate contract obligations to Cox under the WNAC Agreement. D. 38 at 8–10. Thus, the Mission Agreement is simply irrelevant.

As expected, rather than argue the plain and unambiguous language of their WNAC Agreement, Defendants invoke the Mission Agreement as if it could vary the parties' agreement. D. 38 at 1, 8–10. Defendants then fault Cox for addressing *their* extrinsic evidence arguments, although Cox stated plainly these were only presented in the alternative. *Compare* D. 38 at 5, 8 ("Plaintiff's motion is rife with references to extrinsic evidence") *with* D. 20 at 13 ("Defendants may invoke extrinsic evidence"), D. 20 at 11 (the text "unambiguously forecloses Defendants' position, the Court need not resort to extrinsic evidence"), D. 20 at 3 ("In any event, even if contract interpretation principles and extrinsic evidence were needed to resolve a dispute between the WNAC and Mission Agreements, there is no reasonable question …"). Defendants' extrinsic evidence arguments are, of course, mistaken. *Exelon*, 176 A.3d at 1267.

Moreover, Defendants concede the ultimate conclusion that, even if the separate Mission Agreement were interpreted with the WNAC Agreement, they still had to assign and comply with their obligations under the WNAC Agreement. D. 38 at 2. They do not contest that conclusion from their own representations to Cox. D. 17-7; D. 17-8. They also do not contest that conclusion from contract interpretation principles that (1) the Mission Agreement cannot be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity; (2) the WNAC Agreement was adopted later in time and controls, by its amendment and extension on February 11, 2020, over the Mission Agreement of December 28, 2018; (3) the relevant provision of the WNAC Agreement is more specific than the corollary provision in the Mission Agreement; and (4) the WNAC Agreement and Mission Agreement may be harmonized because the Defendants' obligation explicitly turned on Cox's request in the WNAC Agreement. D. 20 at 14–16. Nor do

5

Defendants dispute that conclusion from their own negotiations because they cannot: they negotiated and agreed to the language and have exactly the same evidence. D. 23 at 17–28.

As for industry custom (which is again immaterial with the undisputed and unambiguous terms), Defendants concede the argument. They agree that "retransmission agreements frequently include an 'after-acquired' station and assignment provision, which provides the terms of the agreement in the event that a broadcast owner buys or sells a TV station to another broadcast owner," and that "the purpose of an after-acquired station provision is to expressly provide which retransmission agreement governs the terms of the relevant parties' relationships in the event of an acquisition of one or more television stations." D. 38 at 2. Within those industry customs, Defendants agreed to an "after-acquired" provision that made assignment and assumption *Cox's choice* and included specific *regardless* provisions, so there would be no ambiguity that assignment and assumption were required, despite more general "after-acquired" provisions in other agreements. D. 20 at 16–17. Thus, declaratory judgment is proper because there is no material dispute anywhere in the record, and Cox is entitled to judgment under the WNAC Agreement.

### C.    Discovery Is Unnecessary with Undisputed Material Evidence.

Not only is declaratory judgment proper, Defendants do not contest the material facts in Cox's statement (D. 21) or show by affidavit or declaration after multiple delays that they cannot present facts essential to justify their opposition. Fed. R. Civ. P. 56(d); D. Mass. L. R. 56.1; *Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*, 330 F. Supp. 3d 616, 623 n.1 (D. Mass. 2018) (Casper, J.).

Defendants argue mistakenly that declaratory judgment is "procedurally improper" without discovery. D. 38 at 1. As both parties cite (D. 20 at 4, D. 38 at 6) and this Court has held—as affirmed by the First Circuit—discovery is not required before the Court may decide declaratory

judgment. *See Algonquin Gas Transmission, LLC v. Town of Weymouth*, 365 F. Supp. 3d 147, 158 (D. Mass. 2019) (Casper, J.), *aff'd*, 919 F.3d 54, 65 n.5 (1st Cir. 2019) ("Weymouth argues that entry of summary judgment for Algonquin would be inappropriate before discovery has been conducted. Weymouth, though, did not move to defer the district court's consideration of the summary judgment motion to allow for discovery pursuant to Fed. R. Civ. P. 56(d)."); *see also Over the Rd. Drivers, Inc. v. Trans. Ins. Co.*, 637 F.2d 816, 820–21 (1st Cir. 1980) ("the absence of discovery in no way precludes summary judgment"); *American Int'l Ins. Co. v. Vessel SS Fortaleza*, 585 F.2d 22, 23 (1st Cir. 1978) (same).

Nor do Defendants oppose Cox's motion by affidavit, declaration, or any functional equivalent under Rule 56(d). *See Algonquin*, 919 F.3d 54 at n.5; *Jackson*, 330 F. Supp. 3d at 623 (Casper, J.); *Kelley v. Lawrence Pub. Sch.*, No. 16-CV-11116-DJC, 2018 WL 6833508, at *4 (D. Mass. Dec. 27, 2018) (Casper, J.). Rule 56(d) is clear that a non-movant must show by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition" and request an appropriate order. While Defendants vaguely claim that discovery may be needed, they have not provided or pointed to any evidence to the contrary or explained why they cannot produce the evidence. D. 38 at 9 ("expert testimony *may be* relevant"); *id.* ("expert discovery is *likely* necessary"). Defendants also fail to controvert the undisputed facts in Cox's statement of facts. D. 21. Accordingly, the material facts of record in Cox's statement of undisputed facts are "deemed for the purposes of the motion to be admitted." D. Mass. L. R. 56.1; *Jackson*, 330 F. Supp. 3d at 623 n.1.

The reality is that this motion does not require discovery for the limited declaratory relief that Cox requests. There are no material disputes in this first-party contract action, as underscored by Defendants' opposition. Nor does their opposition establish that discovery will influence the

outcome of the motion. Instead, Defendants' response concedes the undisputed and unambiguous contract obligations. D. 38 at 2. And even if the Court needed more evidence, Defendants have access to the same evidence as Cox. While they complain about Mr. Tygh's declaration, Defendants were parties to their own communications, negotiations, and evidence that Mr. Tygh offers. Tellingly, Defendants offer *no* evidence or describe the kind of evidence needed to depict a different set of facts. The only reasonable conclusion is there is no genuine dispute between the parties, and thus declaratory judgment should issue because, under Defendants' own cited standard, it "turn[s] on legal issues not likely to be significantly affected by further factual development." D. 38 at 6 (citing *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995)).

Since November 2020, Defendants have been on notice of this dispute, and their current counsel have been involved since January 2021. D. 38 at 4. Defendants and Mission's counsel made the same arguments back in their January 18, 2021 letter, and have turned away any possible agreement or resolution since that letter. D. 38-2. Even after the complaint and declaratory judgment motion were filed months ago, Defendants have still refused to agree to *anything*—including a speedy hearing, expedited briefing and discovery (like production of the alleged assignment and assumption, and Mr. Tygh's deposition), stipulated facts, protective or ESI orders, indemnity, payments, or proposed renewals—and have instead requested multiple continuances and delays. D. 15, 30, 31.

At bottom, Defendants have not, and cannot, justify their failure to present facts to the Court because "Rule 56(d) is designed to minister to the vigilant, not to those who slumber upon perceptible rights." *McKeague v. One World Techs., Inc.*, 858 F.3d 703, 707 (1st Cir. 2017); *Velez*

*v. Awning Windows, Inc.*, 375 F.3d 35, 41 ("it would strain credulity to characterize the defendants' pretrial discovery efforts in this case as duly diligent").

## II.      Declaratory Judgment Should Be Entered Because an Actual Controversy Exists and Cox Faces Hardship.

Contrary to Defendants' opposition (D. 38 at 10–11), Cox's motion also shows that the hardship element is satisfied here because "the challenged action creates a direct and immediate dilemma for the parties." D. 20 at 3–4, 9–10 (citing *Riva v. Ashland, Inc.*, No. 09-cv-12074-DJC, 2013 WL 1222393, at *8 (D. Mass. Mar. 26, 2013) (Casper, J.) (quoting *Stern v. U.S. Dist. Court*, 214 F.3d 4, 10 (1st Cir. 2000) (quoting *W.R. Grace & Co. v. EPA*, 959 F.2d 360, 364 (1st Cir. 1992))).

### A.      Cox Faces Hardship from this Dispute.

Defendants' opposition raises two flawed arguments. First, Defendants argue incorrectly that the dispute "relates to money, and does not merit emergency declaratory relief." D. 38 at 10.[1] As Cox's motion explains in detail, the dilemma is that Cox faces not only approximately $4 million in money damages, but also a breach or "go dark" threat by Mission and Defendants' counsel from this lawsuit, and possible claims for breach of contract, copyright infringement, and FCC regulatory enforcement, which Defendants must indemnify. D. 20 at 3–4, 9–10. Defendants do not contest or deny any of Cox's copyright infringement, FCC regulatory enforcement, and indemnity arguments. D. 38 at 1–12.

Defendants' argument also confuses the hardship standard with monetary damages. In determining hardship, the First Circuit and this Court have "explained that the key question is 'whether granting relief would serve a useful purpose, or, put another way, whether the sought-

---

[1] Defendants also confuse Cox Communications, Inc. with CoxCom LLC. D. 38 at 7, 10–11, n.3; *Lechoslaw v. Bank of Am.*, N.A., 618 F.3d 49, 55 n.8 (1st Cir. 2010) ("a parent corporation and its wholly-owned subsidiary are generally regarded as separate and distinct entities").

after declaration would be of practical assistance in setting the underlying controversy to rest.'" D. 20 at 4 (citing *Riva*, 2013 WL 1222393, at *8 (quoting *Verizon New England, Inc. v. Int'l Brotherhood of Elec. Workers*, 651 F.3d 176, 188 (1st Cir. 2011))). Defendants concede this standard. D. 38 at 6. Yet that standard does not turn on the amount of money damages, as Defendants incorrectly suggest. D. 38 at 10.

In any event, Cox now faces a new breach or "go dark" threat by counsel for Defendants and Mission from this lawsuit if declaratory judgment does not issue by September 17, 2021. D. 34-1. That threat may force more than twenty stations to go dark for all Cox subscribers (D. 38 at 3), depriving roughly 10,000 viewers of their local broadcast television at a time when new COVID variants have changed the pandemic, and further harming Cox's reputation. Defendants' filings also make clear to Cox that Defendants "own and operate television station WNAC-TV ('WNAC'), which is licensed by the FCC," and their retransmission agreements "ensure compliance with federal communications and copyright laws." D. 38 at 2. Defendant WNAC has even sued in this Court for failure to abide by a retransmission agreement. D. 20 at 12; D. 1, *WNAC LLC v. Verizon et al.*, No. 1:21-cv-10750 (D. Mass. May 6, 2021). Defendants ignore these concrete, imminent, and *non-monetary* harms that Cox will suffer absent speedy relief from this Court.

### B.      Final and Complete Resolution Is Not Required.

Second, Defendants' argument is unfounded that Cox "fails to meet the hardship requirement because its requested relief would not resolve the underlying controversy" with Mission. D. 38 at 11. Cox has found no case—and Defendants cite none—that a declaratory judgment motion must resolve the entire controversy, including non-party rights. That argument makes no practical sense and conflicts with First Circuit and this Court's precedent that the "key" question for declaratory judgment is whether granting relief would serve a useful purpose in

resolving the dispute, not the entire case or non-party rights. D. 20 at 4 (citing *Riva*, 2013 WL 1222393, at *8 (quoting *Verizon*, 651 F.3d at 188))).

In trying to bolster their argument, Defendants repeatedly misstate the declaratory relief that Cox seeks with a "separate" agreement and legal question as to Mission. *Compare* D. 17 at 1–2 *with* D. 38 at 1, 5, 10–11. But Cox challenges only Defendants' contract and conduct under the WNAC Agreement, and its requested relief does not implicate other interests. D. 17 at 1–2. There is no need to "solve the underlying controversy with respect to Mission's contractual rights" (D. 38 at 11) because Mission's liability is not at issue in this motion and nothing impedes its ability to protect its own separate interests. D. 17 at 1–2. As Defendants concede, the "separate" Mission Agreement "is outside the scope" of their obligations under the WNAC Agreement. D. 42-1 at 1.

Accordingly, there is no question that declaratory judgment should be allowed because the requested relief only defines the rights and legal relations between Cox and Defendants under their WNAC Agreement.

### III.   Declaratory Judgment Should Be Entered Because Mission Is Not a Required and Indispensable Party.

Throughout their opposition, Defendants incorporate their motion to dismiss that Mission is a required and indispensable party and therefore declaratory judgment is improper. D. 38 at 1, 5, 8 n.1, 9, 10, 11. Defendants also resort to heated rhetoric on behalf of their new owner and indemnitor, Mission, that Cox has "curiously fail[ed] to name Mission," made "nothing more than an attempt to deprive Mission of the benefits of the bargain it negotiated with [Cox]," "cherry pick[ed] which contract it wants to enforce," "s[ought] to shirk its responsibilities under the Mission Retransmission Agreement and deprive Mission of the ability to enforce the bargained-for terms of its agreement with Plaintiff," and ultimately "cause actual harm to Mission." *Id.*

11

Defendants' accusations are neither true nor relevant, and serve only Mission's interests, not theirs, in any event. Cox has reaffirmed, not "shirked," the separate agreement with Mission, and even filed this declaratory judgment action for indemnity to avoid further claims. Defendants admit the Mission Agreement is "outside the scope" of their contract obligations to Cox.  D. 42-1 at 1. As Cox's opposition to their motion also explains, Mission is not a required and indispensable party here because the Court can accord complete relief among *existing* parties, Mission has claimed no interest in this action, and Defendants' motion falls far short of the Rule 19 standard and contradicts controlling precedent. D. 42.

This declaratory judgment is about the rights and legal relations between Cox and Defendants under *their* WNAC Agreement. As Defendants openly concede, they "own and operate television station WNAC-TV ('WNAC'), which is licensed by the FCC." D. 38 at 2. Their WNAC Agreement allows Cox "to retransmit WNAC's broadcast signal to its cable television subscribers in the Providence and New Bedford area" and to "ensure compliance with federal communications and copyright laws." D. 38 at 2. They transferred ownership interest in the WNAC station but failed to assign the WNAC Agreement to the station's buyer, as their assignment agreement with Cox requires, they represented they would, and they concede they were obligated to do. D. 38 at 2, 4–5. And finally, their WNAC Agreement remains in effect with Cox until February 28, 2023, and has not been terminated by any party. D. 38 at 2; D. 23-1; D. 23-2. Therefore, Mission's presence is not required to resolve this first-party contract dispute between Cox and Defendants under the WNAC Agreement.

## **CONCLUSION**

For these reasons, Plaintiff CoxCom LLC, d/b/a Cox Communications requests that this Court grant the Emergency Motion for Declaratory Judgment (D. 17).

Dated: September 13, 2021          Respectfully submitted,

*/s/ Brian O. Watson*
Patricia Brown Holmes (pro hac vice)
Brian O'Connor Watson (pro hac vice)
Allison N. Siebeneck (pro hac vice)
Jeffrey W. Gordon, BBO #698874
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
bwatson@rshc-law.com
asiebeneck@rshc-law.com
jgordon@rshc-law.com

*Counsel for CoxCom, LLC, d/b/a Cox
Communications*

## CERTIFICATE OF SERVICE

I certify that on September 13, 2021, the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record and will likewise be available electronically to any attorneys of record who appear in this matter.

/s/ *Brian O. Watson*
Counsel for Plaintiff CoxCom, LLC,
d/b/a Cox Communications

4834-0320-0762, v. 5